Hanson, Chancellor.
When this petition shall have been duly filed, issue a writ agreeably to its prayer, to Prince George’s county.
The writ de lunático inquirendo was accordingly issued; and an inquisition had and returned; by which it was found, that Cornelius Boarman was then a lunatic of an unsound mind; and did enjoy lucid intervals; but not so as that he was capable of the management of himself and his property; and that he was seized in fee simple of a tract of two hundred acres of land in Charles county, with a number of negro slaves, and other personal property as therein specified, &c.
1th February, 1798.
Hanson, Chancellor.
Ordered, that the care, custody, and charge of the person, and of the estate, real and personal, of Cornelius Boarman, a lunatic, be and it is hereby committed unto John Manning, husband to Mary Ann Manning, one of the presumptive heirs of the said lunatic ; and, that until the further order of the Chancellor, the said John Manning shall use the *90 said estate as his own, without rendering any account of the profits thereof; (a) in consideration of his taking care of the person of the lunatic, and providing him clothing and complete maintenance, and every necessary to his comfort and subsistence, according to his estate and condition: provided, that before the said John Manning shall act as trustee aforesaid, he shall file with the register of this court, a bond to the State of Maryland, executed by himself, and a surety or sureties, approved by the Chancellor, in the penalty of ¿62000,' conditioned for the faithful performance of the trust reposed in him by this order, according to the tenor thereof; and for returning to this court within six months from the date thereof, an inventory of the real and personal estate of the said lunatic, which shall come into his hands, or be known to, or discovered by him ; and for delivering the same up, agreeably to the Chancellor’s order, whenever for that purpose passed. Ordered further, that when the said Manning shall enter upon his trust, he shall make sale of the perishable articles of the said personal estate; and report the same to the Chancellor, in order that he may either ratify or set aside the same.
This trustee gave bond accordingly; and returned an inventory of the property of the lunatic, which had come to his hands. Some time after which, he stated by his petition, that negro James, the property of the lunatic, had frequently absconded from service, and had several times nearly effected his escape; and by so doing had become of little use, and was in great danger of being totally lost. Whereupon the petitioner prayed, that he might be authorised to sell him, &c.
1th Jane, 1805.
Hanson, Chancellor.—
Ordered, that the trustee of the said lunatic, viz. the said John Manning, be and is hereby authorised to sell a certain negro belonging to the said lunatic, called James ; the purchaser of the said slave paying immediately the consideration, or giving bond with surety to the said trustee as such for paying the same with interest, within one year from the *91 time of sale. And the said trustee, as soon as conveniently, may be after the sale, shall return to the Chancellor an account of the sale, in order that the same shall be ratified or otherwise, as to the Chancellor shall seem proper. And upon obtaining the Chancellor’s ratification; and on receipt of the purchase money, and not before the trustee shall, by a good deed, convey the said slave to the purchaser,
James Boarman by his petition, filed on the 26th of June, 1810, stated that the trustee John Manning had been then dead about two years, of which the petitioner, as one of the relations of the lunatic, considered it his duty to inform the Chancellor, and to pray, that another trustee might be appointed. Subjoined to this petition was a certificate, by a solicitor of the court, that the petitioner was one of the relations of the lunatic named in the inquisition ; and that he was a fit person to be appointed trastee.
27th June, 1810.
'Kilty, Chancellor.
Ordered, that the within named James Boarman, be appointed trustee in the place of John Manning, deceased; and that he give bond in the same sum as was directed as to Manning, and have the same powers.
Mary Ann Manning and Ignatius Manning, by their petition, on oath, filed on the 20th of July, 1810, stated that the trustee John Manning, had died some time in January, 1809; but, under an impression, that Mary Ann had been appointed a trustee jointly with him, she had ever since continued to act as such, until she had learnt, that James Boarman had privately filed his petition, and caused himself to be appointed trustee, without imputing any misconduct to these petitioners; that the lunatic was a nephew of Mary Ann', and had long been under her care, so that she was better acquainted with the proper mode of treating him than any other person, and had some influence over him; that the other petitioner was her son, and lived on the same tract of land, immediately adjoining to hers, and would render every assistance in his power. Whereupon, they prayed that they might be jointly appointed trustees, &c.
13th JYovember, 1810.
Kilty, Chancellor.
A petition was presented in July last by Mary Ann Manning and Ignatius Manning, to be appointed trustees for the lunatic, for whom the above named James Boarman had been appointed, which has laid in the office to be decided on when the said James Boarman should offer *92 his bond; but the bond not having been offered by him, and it being necessary that some effectual appointment should be made, it is Ordered, that the appointment of James Boarman, be, and the same is hereby revoked. (b)
The appointment of James Boarman being this day revoked for the reasons therein mentioned, it is Ordered, that the petitioners Mary Ann Manning and Ignatius Manning be, and they are hereby appointed trustees in his place; and that they give bond in the same sum as was directed as to John Manning,. and shall have the same powers. The bond to be filed before the first of January next.
These trustees gave bond accordingly, and took upon themselves the care and management of the lunatic and his estate; and on the 21st of December, 1810, returned an inventory of his property, from which it appeared, that in addition to the other property therein described, they then had in hand the sum of £353 Is. 0d. After which, the matter was, by motion, again, brought before the court.
21 st December, 1810.
Kilty, Chancellor.
The order of the 7th of February, 1798, to remain in force as to the present trustees, who were appointed on the 13th of November last; except as to the last part, until further directions shall be given-,
James Boarman by his petition, filed on the 4th of January, 1815, stated that the lunatic’s estate consisted of about two hundred acres of land and upwards, of thirty negroes, about seventeen of which were working hands; that he was satisfied, from his own observation, and the best information he could obtain, the product of his ■ estate was far beyond the necessary expenditure for his maintenance, even should it have been thus applied but that the trustees have inhumanly and shamefully neglected to furnish him with the comforts of fife, by withholding from him such clothing as was almost indispensable to his existence; and also by placing him in a house not fit for his residence; and leaving him, unattended, to the great danger of his personal safety, if not of his life; that the trustee Mary Ann Manning was a very old and infirm woman, and entirely incapable of attending to the well being of the lunatic. Whereupon, the petitioner prayed, that he, or some other suitable person might be appointed trustee, &c.
*93 4th January, 1815.
Kilty, Chancellor.
The register is directed to file the within petition, and to issue subpoenas to Mary Jinn Manning and Ignatius Manning, returnable to February term iiext; at which term a further order will be made for procuring testimony and hearing the petition.
To this petition the trustee Ignatius Manning put in his separate answer, on oath, in which he positively denied the charge of íiegléct and of inhuman Ot cruel treatment of the lunatic; and averred, that he had been always treated with all the humanity and care which could be bestowed; and that he had had every comfort a man in his situation could have, and had lived in a house very near to, and spent most of his time in the same house with the other trustee Mary Jinn and her son John It. Manning, who had bestowed great care and attention upon him. This respondent admitted, that the other trustee, his mother, was old and infirm^ and had not had the management of the trustee’s estate; and this respondent further' stated, that the lunatic’s lands were only tolerably good; that the greater proportion of his negroes were young and unprofitable, so that the annual proceeds of the whole estate had not been more than sufficient to maintain the Itmafíc, and rear his negroes; and that the increase of the negroes constituted the chief or only enhancement in the aggregate value of the estate; that if the negroes were to be hired Out and dispersed, they might run away, and be wholly lost; he therefore suggested the propriety of having them sold, and the proceeds invested in some public funds, &e.
After which the trustees, by their petition stated, that the produce of the' lunatic’s estate was scarcely sufficient to maintain him and his slaves; that the situation of the lunatic was such as to make it very difficult to take care of him, unless he was placed lit a hospital; and that it would be more to his advantage, that his negroes should be' sold, and the money vested in some' productive fund; and that his lands should he rented. — Whereupon they prayed, that they might be authorized to sell the negroes and in-» vest the proceeds, and to place the lunatic in a hospital, &c.
16th March, 1815.
Kilty, Chancellor.
The above petition cannot be acted on until the question arising on that of Boarman,g is decided; the time for which must depend on either of the panties applying for a hearing.
*94 After the death of Mary Ann Manning the matter was again brought before the court by motion.
20th November, 1820.
Kilty, Chancellor.
Ordered, that John H. Manning be, and he is hereby appointed eo-trustee, in the place of Mary Ann Manning deceased, with Ignatius Manning ; the two to give bond as before directed, and the former orders to remain in force. •
These trustees gave a joint bond accordingly. And on the'9th of July, 1824, James Boarman, by his petition stated, that the estate of the lunatic was very productive, and more/lhan sufficient to support him in every comfort and luxury; but that the trustees had treated him with great unkindness, although he was very mild and inoffensive in his conduct; and they had kept him in an outhouse, which was not sufficient;to protect him from the weather; and with not enough clothing, even of the coarsest kind, to, shield him from the weather, not even enough to cover his body and conceal his nakedness; that the petitioner is one of the next of kin of the lunatic,, in the same degree as the trustees. Whereupon the petitioner prayed, that the trustees might be ordered to return, an inventory of the lunatic’s estate as required by the previous order of the court; to render an account, and to invest the surplus of the profits of the estate in some fund, for . the benefit of those who may be entitled after 'the death of the lunatic; that the petitioner or some other suitable person be appointed in place of, the present trustees; and that a subpoena issue, &c.
15th July, 1825.
Bland, Chancellor.
Ordered,, that the register issue subpoenas to John H. Manning, and Ignatius Manning, of Prince George’s county, as prayed, returnable to September term next; when an order may be passed for talcing testimony and the hearing-of the petition. ' '
James Boarman by his petition, on oath, filed on the, 11th of April, 1826, stated, that the trustee John H. Manning was dead; that the other trustee, Ignatius Manning, since the return of the last process had removed out of the state; and that the estate of the lunatic laid immediately in his vicinity. Whereupon he prayed, that he might be appointed trustee, &c.
11th April, 1826.
Bland, Chancellor.
On considering the petition of James Boarman, filed this day; and it appearing by the return of the sheriff on the subpoenas issued in pursuance of the *95 order of the 15th day of July last, that John H. Manning, one of the trustees, is dead; that Ignatius Manning, the other trustee, now resides out of the state, (c) and that the grant or appointment made by the orders of the 13th of November, 1810, and of the 20th of November, 1820, were joint, a mere authority without any interest, which determined by the death of one of the trustees. (d) It is therefore Ordered, that the appointment of the said Ignatius Manning as trustee of the said lunatic, be and the same is hereby annulled.
And it is further Ordered, that the care, custody, and charge of the person and of the estate, real and personal, of the said Cornelius Boarman, a lunatic, be and they are hereby committed unto James Boarman, of Charles county, one of the next of kin of the said lunatic: provided, that before the said James Boarman shall act as trustee as aforesaid, he shall file with the register a bond to the state, executed by himself, and a surety or sureties, to be approved by the Chancellor, in the penalty of ten thousand dollars, conditioned for the faithful performance of the trust reposed in him by this order; and for returning to this court, within six months from the date thereof, an inventory of the real and personal estate of the said lunatic which shall come to his hands, or be known to, or discovered by him; and for delivering the same up agreeably to the Chancellor’s order; and to account for the proceeds of the same to the lunatic’s use, and in such manner as the Chancellor' shall direct by any future order.
The trustee Boarman gave bond accordingly. Soon after which, Ignatius Manning by his petition, on oath, stated, that he had resided within the District of Columbia ever since the year 1817, which fact was well known to the Chancellor when he passed the order of the 20th of November, 1820; that the lunatic then occupied the same house in which he had resided for the last thirty years, and which was then every way good, sufficient and suitable for him; that he was taken great care of by the petitioner’s brother, to whom he was attached; that the conduct of the petitioner, in relation to the lunatic and his estate, had been in all respects fair and upright; that having been authorized by the previous orders of this court to use the lunatic’s estate as his own, the *96 order of the 11th of April last operated oppressively upon him, inasmuch as he had commenced and was then carrying on a crop with the negroes; that James Boarman was a man of bad character; and, his sureties, although respectable men, were not sufficient for the purpose. Whereupon this petioner prayed that the order of the 11th of April last might be rescinded, &c.
28th June, 1826.
Bland, Chancellor.
Ordered, that the matter of the said petition be taken up, considered and decided upon, and the order of the 11th of April last, be rescinded, on the 26th day of July next, unless good cause to the contrary be then shewn: Provided, that a copy of this order, together with a copy of the said petition, be served on the said James Boarman on or before the 12th day of July next. And it is further Ordered, that the order of the 11th of April last be, and the same is hereby suspended until further order.
James Boarman put in his answer, on oath, in which he again urged, that the trustee Ignatius Manning, was a non resident, without denying, that the fact had been made known to the Chancellor when the appointment was made, as was alleged; that this respondent’s character was good-; that the trustee Ignatius Manning had neglected his duty, See. Whereupon this respondent prayed, that the order of the 28th of June last, might be revoked; that the trustee Ignatius Manning might be ordered to render an account, &c.
After which, James Boarman, by his petition, stated, that the lunatic Cornelius Boarman was dead; and that he had obtained letters of administration upon his estate. Whereupon he prayed, that the trustee Ignatius Manning might be ordered to render a full account; and that the petitioner might have such other relief as was suited to the nature of his case.
6th February, 1829.
Bland, Chancellor.—
Ordered, that the said Ignatius Manning render a full and true account, on oath, of all his proceedings as trustee of the late Cornelius Boarman, as prayed, on the 12th day of March next, or show good cause to the contrary: provided, that a copy of this order, together with a copy of the said petition, be served on the said Manning on or before the second day of March next.
This order not having been served in time, it was, on motion, renewed, the time of service enlarged, and the first of June then next appointed as the day to show cause.
*97 The trustee Ignatius Manning put in his answer on oath, as required, in which he stated, that he had delivered over to the administrator of the late lunatic, all his personal estate, except the one-third part of the sum of £353 7s. 0d. which could be deducted from the proportionate part of the said lunatic’s estate, due to this respondent as one of his heirs, &c.
After which, the administrator Boarman, by his petition stated, that the personal estate of his intestate had been sold under an order of the Orphans’ Court; that Ignatius Manning had purchased to a large amount at that sale; and that no distribution could be made of the intestate’s estate but by his administrator. Whereupon he prayed, that the trustee Ignatius Manning might be ordered to pay, or bring into court the sum of £353 7s. 0d. for which he had admitted himself to be accountable, &c.
Iñth June, 1829.
Bland, Chancellor.—
Ordered, that the said Ignatius Manning forthwith pay unto the petitioner James Boar-man, as the administrator of Cornelius Boarman, or bring into this court the sum of £353 7s. 0d. together with legal interest thereon, from the first day of the present month; the said Ignatius having then failed fully to account, or show good cause as directed by the order of the 6th of February last.
This order having been served, and not having been complied with, on application, an attachment was ordered. After which, the trustee Manning by his petition stated, that the sum of £353 7s. 0 d. had cometo the hands of his father, who was the first trustee, and on his death it had been, by his direction, and with consent, distributed among his three sons, as the next of kin of the lunatic, who would be entitled to it after his death; so that no more than one-third, part of that amount had ever, actually, come, to the hands of this trustee; that he had consented to this arrangement ; and now deemed it admissible, because he and his brothers, among whom it had been divided, were, as the lunatic’s next of kin, entitled to a distributive share of his estate, much larger in amount than the sum of money thus returned. Whereupon the petitioner prayed, that the amount might be discounted from the distributive shares of the intestate’s estate, to which they were entitled, or that all further proceedings in this court might be suspended until a settlement could be had with the Orphans’ Court, &c.
lsi August, 1829.
Bland, Chancellor. —
The petition of Ignatius Manning having been submitted, the proceedings were read and considered.
*98 It is perfectly clear, from the proceedings, that Igndtius Manning is chargeable with the sum of £353 7s. 0d. which he has, or ought to have in his hands, as a part of the late lunatic’s estate. On the death of the lunatic, the jurisdiction of the Chancellor over his estate immediately ceased for every purpose whatever; except that of calling the trustee to account, and directing him to hand over all the property of the deceased lunatic to his legal representatives ; so that this court might, without delay, completely deliver itself of the whole subject of which it had taken charge, (e)
But if this court were to continue its authority over the estate of the deceased lunatic, for the purpose of ascertaining the proper discount to which the trustee was entitled, as next of kin, or creditor other than as trustee, there would be scarcely a single instance in which, upon the death of a lunatic, who had been under the care of this court, that the administration and distribution of his estate would not be thrown upon this court, instead of the Orphans Court, which has been, in so especial a manner and in general, clothed with jurisdiction in all matters relative to the administration and distribution of deceased persons’ estates; since it must very often happen, that a trustee may have such a claim as this upon the estate of the deceased. Such a course of proceeding, as a continuation of the jurisdiction in lunacy, cannot be allowed. But there may be circumstances in which a bill may be filed by a next of kin, or a creditor of the deceased lunatic against his administrator and trustee for the administration and distribution of his estate, in which the trustee may be ordered to account in that cause; and upon such account may have all just allowances made to him. (f) Here, however, the matter is presented in an entirely different form.
A trustee of a lunatic is an agent of the court, who must be held strictly accountable; and who must hold himself at all times ready to account, to deliver the property, and to pay the money in his hands, as ordered by the court, without the least delay.
"Whereupon it is Ordered, that the said petition be and the same is hereby dismissed with costs.
After which, on motion of Ignatius Manning in proper person, the attachment not having been served upon him, the matter was again brought before the court.
*99 5th September, 1829.
Bland, Chancellor.•
Ordered, that the Register be and he is hereby directed to receive from the said Ignatius Manning, the sum of =£353 7s. Od., with legal interest due thereon, and deposit the same in the Farmer’s Bank of Maryland in the usual manner, subject to the further order of this court; that sum with interest being the amount ordered to be paid, or brought into court by the said Manning by the order of the 15th day of June last; and the register is further directed, on receipt of the said sum of money, to give the said Manning a receipt in full for the same in discharge of the said order.
After which, on the application of the administrator, James Boar-man the whole amount, so brought into court was paid to him; and thus this court finally delivered itself from all further concern with the estate of the deceased lunatic.

 The Chancellor of England cannot grant a lunatic’s estate without account; but the Chancellor there, may make what allowance he pleases for the maintenance of the lunatic, as supposing the estate to be £500 per annum, or £1000, he may allow as great a salary as the income of the estate amounts to; so that, in some cases, where the income is very narrow, the whole may be deemed little enough. Sheldon v. Fortescue Aland, 3 P. Will. 110; Lysaght v. Royse, 2 Scho. and Lef. 153; In the matter of Fitzgerald, 2 Scho. and Lef. 436; Shelford on Lunatics, 215.

 Shelford on Lunatics, 133.

 Ex parte Ord, 4 Cond. Chan. Rep. 44

 Ex parte Lyne, Cas. Femp. Talbot. 143 — Ex parte Clarke, 4 Cond. Chan. Rep. 279.

 2 Harr. Pra. Chan. 122; Shelford on Lunatics, 208; Ex parte Clarke, 4 Cond. Chau. Rep. 276.

 Wigg v. Tiler, 2 Dick. 552; Shelford on Lunatics, 218.