THE JOHNS HOPKINS UNIVERSITY *vs.* GEORGE HAW-
KINS WILLIAMS, Executor of HENRY WILLIS BAX-
LEY, and CLAUDE BAXLEY and ISAAC R. BAXLEY.

*Lease construed to be a Security for the payment of money—
Proceeds of sale of Real estate, held to be Personal property.*

On the 26th of August, 1865, B. sold to C. and P. a tract of land for
$54,607; of which $29,607 was to be paid in cash, and the balance,
$25,000 was to be paid in five years, with interest on said sum,
payable semi-annually. B. agreed to execute to any person pur-
chasing a part of said land from C. and P. to the value of $5000,
a conveyance of such aliquot part of said land, upon the payment
to him by C. and P. of such sum. B. further agreed to consum-
mate the sale as soon as the proper papers could be prepared; and
that his wife would unite therein for the purpose of releasing her
dower. The cash portion of the purchase money was paid. On
the 22nd of September, 1865, B. and wife leased to C. and P. the
same tract of land for five years, upon the payment of the yearly
sum of fifteen hundred dollars, as rent, in half-yearly instalments,
with a covenant in the lease on the part of B. to convey to C. and
P. the reversion at any time within five years upon the payment by
them of $25,000. Shortly after the execution of the lease B. went
to Europe, and continued to reside there for several years after the
expiration of the time within which C. and P. had the right to
purchase the reversion. It was in proof, however, that B. was
willing to accept the payment of $25,000, both during and after
the expiration of the term, and to convey the same to C. and P. in
fee, but the latter insisted that the wife of B. should join in the
conveyance; but this, owing to the relations then existing between
him and his wife, B. refused to procure. P. assigned his interest
in the land to C., his co-purchaser and co-lessee, who subsequently
died, leaving a last will. The credit payment of $25,000 with
interest, by consent of all the parties in interest, was paid by the
executors of C. to the executor of B. On a bill filed by the execu-
tor of B. to have determined the respective rights of the parties in
interest, it was HELD:

That the lease should be considered as a mere security for the payment of the $25,000, part of the purchase money, and this sum, together with the interest thereon paid by the executors of C. to the executor of B., must be considered as personal estate, to be distributed as such.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by George Hawkins Williams, executor of Henry Willis Baxley, deceased. The Johns Hopkins University, Claude Baxley, and Isaac R. Baxley in his own right and as executor of his mother Mary Virginia Baxley, were made defendants. The defendants were the parties interested in the estate of Henry Willis Baxley. The object of the bill was to have the Court determine the rights of the parties in interest, to the sum of $28,375, received by the complainant as executor of Henry Willis Baxley, from the executors of Philip S. Chappell, deceased, and to have such rights established and decreed, and the fund distributed accordingly. After the execution and delivery of the lease referred to in the opinion of this Court, Allston A. Perry conveyed all his interest in the land, to his co-purchaser and co-lessee, Philip S. Chappell. Subsequently Chappell departed this life, leaving a last will and testament which was duly admitted to probate, and letters testamentary on his estate were granted to the persons named in said will as executors thereof. The case is further stated in the opinion of this Court. The Circuit Court decreed that the fund was personal property, and was to be disposed of as such in the settlement of the estate of Henry Willis Baxley, deceased, and distributed by his executor under the order of the Court; and that the papers be referred to the auditor to state an account in conformity with the decree, From this decree The Johns Hopkins University appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY, ROBINSON and IRVING, J.

*Charles J. M. Gwinn, Attorney-General,* for the appellant.

The agreement in question was a binding contract for the sale of land, capable of being enforced.    The effect of such agreement is stated with great precision and clearness by Lord WESTBURY, in *Rose vs. Watson,* 10 *H. of L. Cases,* 678.    The ownership of the land sold was transferred by the agreement of August 26th, 1865, subject to the payment of the purchase money.    Every portion of the purchase money for such land, paid in pursuance of that contract, was a part-performance and execution of that contract.    To the extent of the purchase money so paid, equity transferred to the purchaser the ownership of a corresponding portion of the land.    It did no more than this.

Under this theory of the law Chappell and Perry acquired the ownership of the land which they paid for. If they paid all of the purchase money, except $25,000, they acquired the ownership of all the land sold, except land of the value of $25,000.

If this agreement had remained operative, the land would have become, in equity, the property of Chappell and Perry; and the purchase money agreed to be paid would alone have belonged to Baxley.    *Adams' Equity,* (*3rd Am. Ed.,*) 339; *Hall vs. Jones,* 21 *Md.,* 446.

The transaction, however, was not left in this form. It is alleged in the bill of complaint that, at the instance and request of the said Chappell and Perry, the contract of sale, evidenced by the agreement referred to, was subsequently "changed into a lease."    This lease was not executed in pursuance of any agreement contained in the original contract.    It was a new and very different arrangement.    Under the new arrangement the contract was entirely changed.

Chappell and Perry, the lessees, were released from their obligation to pay $25,000 within a period of five years from August 26th, 1865, or within any period of five years.

They ceased to be debtors of this sum of money. They became only lessees of the property for a period of five years, with the right, " *during the expiration of said term of five years,*" to claim a conveyance of the land on the payment of $25,000, and of all rent in arrear, and of a proportion of the accruing rents.

The money which they had paid under the agreement of August 26th, 1865, was no longer a part of the money stipulated to be paid for the entire fee. A part of the money which had been paid under that agreement became evidently a new consideration for a grant of the lease for five years, at a rent of fifteen hundred dollars, and for the release of the obligation to pay the remaining part of the purchase money within the time prescribed in the agreement, and for the substitution, in lieu of such obligation, of an *option* only to purchase the property within a limited period.

Under this new arrangement, Chappell and Perry did not become, in equity, the owners of any part of the fee of the land. They acquired a leasehold interest only, with an option to purchase the reversion of said land, or of parts of said land, upon making certain aggregate or proportional payments within a prescribed time.

If they did not exercise their right of purchase, then, upon the expiration of their term, Baxley, as owner of the fee, would have had a right to re-enter upon the demised premises, but would have had no power to enforce any sale of such premises, for, under the new contract, nothing could become due to Baxley, unless Chappell and Perry elected to become his debtors by purchasing the reversion.

These essential differences between the transactions of August 26, 1865, and September 22nd, 1865, show, we repeat, that the transaction of September 22nd, 1865, was not a sale of the land, but only a lease of the land, with a right to Chappell and Perry, the lessees, to purchase the reversion of the land within a certain period. The period

expressed in the lease was "*during the expiration of said term of five years."* It might very properly be said that the contract expressed in these words was incurably uncertain, and that no option of purchase of the reversion was reserved to Chappell and Perry by this lease. 2 *Parsons on Contracts, (5th Ed.,)* 561, 565, 566.

But if the Court should be of the opinion that the uncertainty thus existing was an ambiguity arising simply from an imperfect expression of the meaning of the party, which ought to be resolved by reference to the general context of the instrument, and there be words in the context capable of affording the desired solution, then it is plain that the words "during the expiration of the said term of five years," can only be read "*prior to the expiration of said term of five years.''* These are the only words which can be supplied by the context of the instrument. They occur in the next succeeding covenant in the lease to that one in which ambiguity exists.

If the effect of the contract of sale, of August 26th, 1865, was to convert into personalty, so far as Baxley and those claiming under him were concerned, the land agreed to be sold to Chappell and Perry, then, unquestionably, the new arrangement, made by the lease of September 22nd, 1865, rescinded the contract of August 26th, 1865 ; and, by restoring to Baxley the entire equitable fee in the land, reconverted his interest in the land into realty.

Baxley, therefore, died, leaving his interest in the land referred to in the lease of September 22nd, 1865, stamped with the qualities of realty. No Court, it would seem, can properly interfere to change the quality of property left by a deceased owner, unless such deceased owner has manifested an absolute intention that such property should bear a character different from that in which it was left. 2 *Story's Eq. Jurisp., sec.* 1214. The record affords no evidence of any such absolute intention. It cannot be deduced from the option to purchase, given by the lease of September 22nd, 1865.

The option given to the lessees to purchase the land, if it was valid, was an option which was required to be exercised prior to the expiration of five years.

The grant of this option by the contract of lease did not convert the realty into personalty. It is settled law that property cannot be considered as converted from realty to personalty by a contract, unless the contract relied on as effecting such conversion is capable of being enforced by a bill for specific performance. When such specific performance cannot be enforced under such contract, then no conversion has taken place. *Haynes vs. Haynes*, 1 *Drew & Smale*, 451, 452; *Edwards vs. West*, 7 *Ch. Div. (L. R.,)* 861–864; *Laws vs. Bennett*, 1 *Cox*, 167.

Now no contract can be enforced by a bill for specific performance, unless it can be enforced specifically against both parties to such contract. *Geiger vs. Green*, 4 *Gill*, 472; *Tyson vs. Watts*, 7 *Gill*, 154; *Rider & Trotter vs. Gray*, 10 *Md.*, 298. And as the contract for the option referred to could not have been in any way specifically enforced against Chappell and Perry, parties to that contract, it would seem to follow, conclusively, that the option to purchase, reserved in that contract to Chappell and Perry, did not convert the land leased into personalty, but left the reversion in that land, when the time for the exercise of the option had expired, ineffaceably impressed with its natural character of realty.

The instrument, dated September 22nd, 1865, could not be treated as security for the unpaid purchase money under the laws of this State, because no affidavit was endorsed thereon, before the recording of said mortgage, that the consideration therein stated was true and *bona fide.* 1 *Code, Art.* 24, *sec.* 29.

The most favorable view to the case of the appellees is that the deed of September 22nd, 1865, was a conditional sale. If it were a conditional sale, time certainly was of the essence of the contract. The character of the trans-

action was fixed at its inception.  Any other construction of the contract than one which made time the essence of the contract, would have been, as we have seen, gravely detrimental to the interests of Baxley, and must be avoided.

There is no circumstance in the record from which the inference can be properly drawn, that Baxley waived the element of time which was the essence of the contract of September 22nd, 1865.

The option given to the lessees to purchase the land was not duly exercised.  The interest of Baxley in the land when he died was in the nature of realty.  The moneys, therefore, which were received by the complainant as executor, from Chappell for the fee of said land, were the proceeds of the sale of the fee of said land.  These moneys were impressed, when so received, with the character of real estate.

*F. H. Hack* and *Charles Marshall*, for the appellees.

On the 22nd of September the last part of the cash payment for the farm was made, and on the same day to secure the balance of $25,000 a lease was executed, providing for the payment of a semi-annual rent of $750— on the 26th days of August and February;—the 26th day of August being the date of the sale of the property, and the contract of sale stipulating, as the lease, for the payment of semi-annual sums of $750.

The lease further provides that the lessor would execute a deed in fee simple to the lessees on the payment of $25,000, with accrued rent, any time "during the expiration of the lease" but not before.  Evidently the word "after" before "expiration of five years," was intended:— the error is apparent.

To ascertain the interpretation of the lease and of the intention of the parties, we have only to regard their acts.

First, in the sworn petition of Mr. Williams, executor, to the Orphans' Court, it is stated that Chappell's repre-

sentatives claimed that the contract of sale remained in force after the expiration of the lease notwithstanding its form—and that Baxley was always willing to receive the balance of money and execute a deed in fee simple, and that the same was in part frustrated by his death.

Again it appears from the record, that in 1867, during the running of the lease, Baxley requested the lessees to pay to Mr. Williams the semi-annual interest on deferred payment for farm, due February 26th, 1867. Again, he requested them to pay to Mr. Williams—" *My attorney,* the $750 interest due this date, August 26th, 1867." And so in all his directions he requests the interest shall be paid and in the receipt, dated April 8th, 1871—*after the expiration* of the lease—the words "for interest" are inserted.

All parties evidently considered the $25,000 secured by the lease as only a loan of money, or as a " deferred payment" as it was termed by the testator under whom the appellant claims.

If the lease had been made for ninety-nine years with a clause for redemption in five years instead of, as it is, a lease for five years only, there may have been some force in the argument that it became an absolute fee in Baxley at the end of five years.

Courts will prefer a construction of a contract consistent with the acts of the parties, to one which requires a forced, unreasonable and absurd construction.

. The right of the vendor, Baxley, in the land had been extinguished, except for the $25,000, for which he had a lien, and which he secured by a lease. This was the case the moment he signed the contract of sale and received the cash payments.

The original contract is silent as to how the balance of $25,000 is to be secured ; it might have contained a stipulation that the security should be a lease for five years, or a mortgage ; but the parties selecting a lease *to carry* out a part of the contract, it is assumed, destroys that contract.

There is nothing whatever in the lease inconsistent with the contract; on the contrary it is almost substantially identical.

The vendor's lien remained undestroyed—the lease was simply to secure it in a convenient form, and to give the right of distraint for the rent.

No doubt Baxley would have had a lease for ninety-nine years, redeemable in five years, by the payment of $25,000, had his right in the land or control over it extended beyond five years; but the original contract had limited his interest to collect interest during five years, and then to enforce his lien. And at the expiration of the lease the contract again came in force; Baxley merely loaned the $25,000 to the lessees for five years—at $1500 per annum. When that expired, the lease having never been rescinded, the original contract came in force again, and Chappell continued to pay interest, and Baxley to receive it under that contract, the receipts were always for interest; the lease having expired, all the rights of the parties were to be ascertained by the contract. This construction is to be preferred, because

1. It leads to no improbable or unreasonable consequences.

2. It is consistent with the construction and acts of the parties, who all finally joined in making Chappell's representatives a deed on the payment of the balance of $25,000.

We therefore think it beyond doubt that the lease was simply a security for money due Baxley, and that as it has been paid to Baxley's executor—it is distributable by him as personalty. A simple contract, not under seal, is never merged or destroyed by a specialty, when the latter is incidental to the former, or is intended as security. 14 *Johnson*, 404; 17 *Maine*, 113; 1 *S. & R.*, 294; 69 *E. C. L. Rep.*, 20; *Smith on Contracts*, 23–24.

At Baxley's death there was a valid contract of sale, converting his land into money, and as such it is distributable.

In the case of *Banks vs. Haskie*, 45 *Md.*, 207, a question arose similar in principle to this. In that case there was a lease for ninety-nine years with an option of renewal, which the lessee did not exercise during or at the expiration of the lease. There was no obligation on the lessee to take a new lease, whilst there was on the part of the lessor to give one. The lease having expired the Court held the obligation to renew was still binding on the lessor, though there was no mutuality of obligation.

ROBINSON, J., delivered the opinion of the Court.

The question in this appeal is whether the sum of $28,375, paid to George H. Williams as executor of Henry W. Baxley, by the executors of Philip S. Chappell, is to be treated as real or personal estate?

It appears that Baxley sold to Philip S. Chappell and Allston A. Perry the land from which the money in question was ultimately derived, for $54,607—$29,607 was to be paid in cash, and the remaining $25,000 in five years, with interest on said sum payable semi-annually.

Baxley also agreed to execute to any person purchasing a part of said land from Chappell and Perry to the value of $5000, a conveyance of such aliquot part of said land upon the payment of such sum to him by Chappell and Perry.

The agreement further set forth an undertaking that Baxley would consummate the sale as soon as the proper papers could be prepared; and that his wife would unite therein for the purpose of releasing her dower.

The agreement was dated August 26th, 1865, and the credits upon it show the payment by Chappell and Perry of $29,607.

The agreement thus executed became a binding contract for the sale of land, capable of being enforced. Under it,

Chappell and Perry would be treated in equity as the owners of the land, and Baxley would be treated as the owner of the money due on the purchase. As purchasers they could have devised it as land even before a conveyance, or in case of intestacy, it would have descended to their heirs-at-law. *Rose vs. Watson,* 10 *House of Lords Cases,* 678; *Seton vs. Slade,* 7 *Vesey,* 264–274; *Story's Equity Jurisprudence, sec.* 790.

On the other hand the $25,000 balance of purchase money belonged to Baxley, and upon his death would have formed a part of his personal estate.

This we understand to be conceded by the counsel for the appellant.

It appears however that on the 22nd of September following, Baxley and wife leased to Chappell and Perry the same tract of land for five years upon the payment of the yearly sum of fifteen hundred dollars as rent, the same to be paid semi-annually, with a covenant in the lease on the part of Baxley to convey to the lessees the reversion at any time within five years, upon the payment by them of $25,000.

Shortly after the execution of the lease, Baxley went to Europe, and continued to reside there for several years after the expiration of the time within which the lessees had the right to purchase the reversion. It appears, however by the proof, that Baxley was willing to accept the payment of the $25,000, both during and after the expiration of the term, and to convey the same to the lessees in fee, but the latter insisted that his wife should join in the conveyance; and this, owing to the relations then existing between him and his wife, Baxley refused to procure.

It is now contended, that by the execution of the lease, the ownership in the land which Chappell and Perry acquired under their purchase of August 26th, was surrendered; and that they are no longer to be treated in equity, as the owners of the property and entitled to a

conveyance of the same upon the payment of the balance of the purchase money, but are merely lessees, with the privilege of purchasing the reversion at any time within five years upon the payment of $25,000. And that Baxley is to be treated as being no longer entitled to the balance of the purchase money under the original agreement, but as the owner, in fact, of the fee. And that the money which was paid by Chappell's executors to the executor of Baxley, with the consent of all parties interested, must therefore be treated as *personal* estate.

Now if this question depended solely upon the face of the lease, there might be some ground to support this contention.

But no question is better settled, than that in cases of this kind, Courts of equity will regard the substance and not the mere form of agreements and other instruments, and will give them the precise effect which the parties intended, no matter how or in what form, that intention may be expressed. So the question then resolves itself into this, did the parties, by the execution of the lease of September 22nd, mean to surrender the rights acquired respectively by them, under the original agreement of the 26th of August? And in considering this question, it does strike us, to say the least of it, as unreasonable to suppose that Chappell and Perry, after having purchased a valuable tract of land near the City of Baltimore for the sum of $54,000, and after having paid $29,000 on account of the same, and being entitled to a conveyance in fee, upon the payment of $25,000, the balance of the purchase money, should within a few weeks afterwards agree to surrender all their rights thus acquired; and in lieu thereof, to accept a lease of the same property for five years, upon the payment of a yearly rent of fifteen hundred dollars, with the privilege of purchasing the reversion within that time, upon the payment of $25,000. The record entirely fails to show any consideration or inducement on their part to sustain this construction of the lease.

But we are not left to the reasonableness or unreasonableness of the acts of the parties for the purpose of ascertaining their intention. Their declarations and admissions, both oral and written, show conclusively that all the parties to the lease of September 22nd, regarded it merely as security for the payment on the part of Chappell and Perry of the $25,000, the balance of purchase money due on the agreement of August 26th.

The testimony of the attorney, confidential friend and executor of Baxley, shows that the latter was willing at any time after the expiration of the term limited by the lease, to accept the payment of $25,000, and to execute a conveyance of the fee to Chappell and Perry. If the latter had no interest in the property except under the lease, and they had by their own default forfeited the right to purchase the reversion within the time limited, it is strange that Baxley should be willing to convey to them property worth $54,000 for the sum of $25,000.

But in addition to this, we have the written declarations of Baxley himself, that he considered the lease merely as a security for the payment of the $25,000, balance due on the purchase of August 26th.

In his draft on Chappell and Perry for the payment of the half year's rent under the lease, he says:

"Pay to George H. Williams, Esq., attorney, seven hundred and fifty dollars, semi-annual interest on deferred payment for farm due February 26th, 1867." Then again by his draft of August 26th, 1868, he speaks of it "as semi-annual interest due upon farm in Baltimore County purchased of me." And then in a subsequent draft as interest "payable on account of credit purchase of Baltimore County farm."

There is no claim or demand for rent due under the lease, but in each draft the demand is for interest due by Chappell and Perry on account of purchase money.

We are of opinion, therefore, that the lease must be considered as a mere security for the payment of the $25,000, due by Chappell and Perry under the purchase of August 26th, and that this amount, together with the interest thereon paid by Chappell's executors to the executor of Baxley, must be considered as personal estate to be distributed as such.

*Decree affirmed.*

(Decided 20th June, 1879.)