Montague vs. Sewell.

(Decided 19th January, 1882.)

---

KATE MONTAGUE *vs.* THOMAS SEWELL, JR., and RICHARD SEWELL, JR. THOMAS SEWELL, JR., and RICHARD SEWELL, JR. *vs.* KATE MONTAGUE.

*A Loan of Money at Usurious Interest under the Form of a Redeemable Ground Rent—Art. 95, sec. 2, of the Code, as to Assignee of Bond, &c., without Notice of Usury.*

There being an application from S. to R., a broker, for a loan of $30,000, and D., trustee, being found ready to make it, S. conveyed to R. in fee, a piece of ground for a recited consideration of $31,500. As part of the same transaction, R. then leased the same ground to S. at an annual rent of $1890, with power of distress and of re-entry, redeemable within six months after the lapse of ten years from the date of the lease, upon payment of $31,500, and all arrearages of rent. R. then conveyed the ground with the rent incident thereto, to D., trustee, at a consideration of $31,500. D., trustee, however, advancing only $30,000 to S. Afterwards the ground rent, in the partition of the estate of which D. was trustee, was transferred to M., without knowledge of the transaction, at a valuation of $31,500. On a bill filed by S. to have the transaction declared a mere loan of money at usurious interest; to have the instruments of conveyance vacated ; and that S. might be allowed to pay, and M. required to receive the amount of money actually borrowed of

D., trustee, with legal interest thereon; and that the property embraced in the conveyances might be totally discharged therefrom; and that distress proceedings taken by M. for the collection of arrearages of rent might be restrained by injunction, it was HELD:

That the transaction being a loan of $30,000 at usurious interest, S. was entitled to have the ground relieved of the operation of the instruments made to give it effect, and upon bringing into Court to be paid to M., the said sum with all interest due, at the rate of *six per cent.*, to have those instruments cancelled; that M. stood in the shoes of D., trustee; and that Art. 95, sec. 2, of the Code, did not apply to this case.

APPEALS from the Circuit Court of Baltimore City.

In October, 1876, Thomas Sewell, Jr., and Richard Sewell, Jr., applied to Henry W. Rogers, a broker, to procure them a loan at 6½ per cent., to be secured on real estate, situate on Pennsylvania avenue, in Baltimore city. Mr. Rogers reported that he could procure a loan of $30,000 at that rate, from John M. and Andrew W. Dennison, trustees of Eliza C. Montague, for her life-time, under the will of Marcus Dennison, with remainders over to her children—among whom was the appellant, Kate Montague.

On the 14th November, 1876, Mr. Rogers presented a set of papers prepared ·by Rufus W. Applegarth, attorney for the Dennisons, to the Sewells, to be executed in order to carry out the agreement for the loan. *First*, a deed in fee of the real estate on Pennsylvania avenue from them to Rogers, the consideration being stated at $31,500. *Secondly*, a lease from Rogers to the Sewells of said property, at an annual rental of $1890, payable quarterly, redeemable at the end of ten years, and before ten years and six months had elapsed, upon payment of $31,500, and all arrearages of rent, and rent *pro rata* to date of redemption. *Thirdly*, a deed from Rogers to the Dennisons, for the ground rent thus created, at a consideration of $31,500.

In fact, only $30,000 were advanced to the Sewells, and that amount was further reduced by payments to Applegarth as attorney, and Rogers as broker. When the parties met to conclude the transaction, Mr. Dennison produced his check for $31,500, payable to the order of Henry W. Rogers, and Mr. Rogers gave his own check back to Mr. Dennison for $1500, leaving the actual receipt by Rogers only $30,000. This sum Rogers passed over to the Sewells, less $375.00 for his own commissions, and $75 to Mr. Applegarth. On the 11th April, 1877, Mrs. Montague died; on the 21st January, 1878, a bill was filed by Wm. J. Montague, her son, for the partition of the estate held in trust by John M. Dennison, surviving trustee under the will of Marcus Dennison, against John M. Dennison, trustee, and complainant's co-devisees and sisters, Kate and Bessie M. Montague, the two latter, being with the complainant in that bill, the devisees in remainder under the will of Marcus Dennison. In that proceeding, the ground rent above described was assigned to Miss Kate Montague, at the price of $31,500, under order of Court.

In October, 1879, the Sewells filed a bill in the Court below, in which they averred, that the transaction was a mere loan—that they submitted to the form of the security and its exactions, because under pressure for money; that the Pennsylvania avenue property was worth at least $60,000 ; that the defendant *denied the true nature of the transaction*, and falsely and fraudulently set up an absolute title, when in fact, she had only a mortgage; that she was collecting the interest, and *usurious interest at that*, under the fictitious name of rent, and by harsh and distressing modes, allowable only in case of rent; that the complainants were unable to utilize the great margin in their property, because of this cloud and false claim of absolute title, and that the *proof of the true nature* of the transaction, though now accessible, was liable to be lost by

death or other causes ; that the condition for redemption was hard in point of time, and in point of terms, requiring the complainants for ten years, to pay $6\frac{1}{2}$ per cent. interest, and then charging 5 per cent. bonus for redemption—thus adding $\frac{1}{2}$ per cent. per annum to the already usurious interest, and making the loan bear 7 per cent. in fact; offering to account and pay principal and interest at 6 per cent. to Miss Kate Montague, and praying the Court to decree an account and a reconveyance to them, upon the payment of such sum as the Court should, in that mode, find to be due; and that she might be restrained from distraining for the usurious interest, falsely called rent.

The answer denied the averments of the bill as to the nature of the title of Miss Montague, and insisted that the transaction was a *bona fide* purchase of a ground rent, and did not represent a loan. Testimony being taken, the Court below (DOBBIN, J.) on the 3rd March, 1881, decreed that the transaction was a loan at usurious interest, and that the Sewells would have the right, at the end of ten years, to have an account and redeem the property— obtaining credit for usurious payments—and for that purpose retained the suit, but dismissed the bill at the complainants' costs, as to the injunction against collecting the rent by distress, and as to the present redemption and cancellation. From this decree, the defendant and the complainants appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*Charles Beasten, Jr.,* and *Charles G. Kerr,* for the appellant, Kate Montague.

*John H. Handy,* for the appellants, Thomas Sewell, Jr. and Richard Sewell, Jr.

ALVEY, J., delivered the opinion of the Court.

The questions in this case arise under the usury law
of the State; and the first and principal of these ques-
tions is, whether the original transaction between the
Sewells and the Denisons, as conducted by Rogers, the
broker, was really intended as an evasion of the statute
against usury? In other words, whether the deed of the
14th of November, 1876, by the Sewells to Rogers, for the
recited consideration of $31,500; the lease of the same
date and of the same property, by Rogers to the Sewells,
at the annual rent of $1,890, payable quarterly, with
power of distress, and of re-entry, in default of payment;
the subsequent conveyance of the fee in the property, with
the benefits of the subsisting lease, to the Denisons by
Rogers,—were really and *bona fide* intended as the trans-
fer and lease of the property, for the objects and pur-
poses expressed in the instruments, or whether those
instruments were used as a shift and a cover for the eva-
sion of the usury law of the State?

The Sewells, the complainants in this cause, insist,
that the transaction was a flagrant violation of the usury
law; that it was in fact a loan of money at an excessive
rate of interest; and that it never was the design that
the property conveyed to Rogers should be considered as
conveyed absolutely and unconditionally: that the mak-
ing of the deed to Rogers, the lease by the latter, and his
conveyance to the Denisons, were all parts of one and the
same transaction; and were intended as means of secur-
ing money loaned at excessive interest. While, on the
other hand, the defendant, who in fact had no participa-
tion in, or knowledge of, the transaction herself, but who
holds under the Denisons who were trustees, claims and
insists that the transaction was really what it professes
to be on the face of the papers,—that is, a purchase by
the trustees of an annual ground rent of $1,890, redeem-
able after a certain period, for the benefit of a trust estate,

of which she was one of the *cestuis que trust ;* and that, in the subsequent division and distribution of the trust estate, this ground rent, was transferred to her, at the price set forth as the consideration of the deed to Rogers, of $31,500.

Such being the contention of the respective parties, the present bill was filed by the Sewells to have the transaction declared a mere loan of money at usurious interest; to have the instruments of conveyance vacated, because of their supposed illegality ; and that they, the complainants, might be allowed to pay, and the defendant required to receive, the amount of money actually borrowed of the Denisons, with legal interest thereon ; and that the property embraced in the conveyances be totally discharged therefrom. They also pray by their bill to have certain distress proceedings, taken by the defendant for the collection of the arrearages of rent, restrained by injunction.

After answer, proof was taken, and the decree of the Court below was to the effect, that the transaction was in reality a loan of money for excessive interest; but that the instruments of conveyance should stand as security for the money actually loaned, with legal interest thereon ; and that the bill, so far as it sought a restraint of the collection of the arrearages of rent, should be, and was, dismissed ; though the suit was retained for the purpose of affording the complainants, *when they should be entitled to the same,* an account properly stated, and such further relief as their case should require. From this decree both parties have appealed.

Upon careful examination of the evidence contained in the record, it is quite apparent that the witnesses do not in all respects agree in their statements, as to what did occur in the course of the negotiation, nor as to the real nature and understanding of the transaction. Upon the whole evidence, however, the Court below came to the conclusion, that there were well established facts in the

case, which could not be satisfactorily accounted for upon any other theory than that the transaction was a loan of $30,000, at usurious interest, to be repaid within six months after the expiration of ten years from the date of the loan; and in that conclusion we entirely concur.

There is no question in regard to the fact,—indeed it has not been seriously controverted on the part of the defendant,—that $30,000 was the real and only sum advanced by the Denisons to the Sewells for the deed made to Rogers. The deed, however, recites a consideration of $31,500, and the annual rent reserved in the lease made to the Sewells is at the rate of six per cent. per annum on that amount. Rogers was authorized by the Sewells to procure a loan of $30,000 on mortgage, at six and a half per cent. interest; and though Denison declared that he would have nothing to do with a mortgage, but would buy a ground rent on the property proposed to be mortgaged, if one were created, yet the transaction, by the form it ultimately assumed, was, in its main features, in substance and effect, but little more than a mortgage. It is true, the deed to Rogers, and that from Rogers to the Denisons, profess to convey an absolute and indefeasible estate; but the lease to the Sewells, made simultaneously with the deed made by them to Rogers, is not only a renewable lease, but contains a clause securing the right of redemption of the estate conveyed by the lessees, upon the payment or tender of the $31,500, and all rent due, by the terms of the lease, at any time within six months after the expiration of ten years from the date of the lease. The facts, however, that the rent reserved on the lease may have been more than six per cent. per annum for the money actually advanced, and that the lease contains a clause of redemption after the expiration of a certain period, would not of themselves be determinate and conclusive of the question as to the real nature of the transaction; for if it was in point of fact a *bona fide* purchase

of the ground rent as such, there could be no question of its validity, notwithstanding the facts just mentioned. The simple fact of the existence of the right of redemption upon re-payment of the original consideration of the deed, with all rent due, after the lapse of a certain time, would not of itself be very controlling; but it is an important fact to be considered in connection with the other facts and circumstances of the case, when they all tend to the same conclusion.

So far as the transaction in question is evidenced by the legal instruments executed by the parties, it is *prima facie* valid and free from objection. The form taken is in all respects legal, and the instruments used fail to disclose any taint of usury. But, as said by the Supreme Court, in *Scott vs. Lloyd*, 9 *Pet.*, 446, while the purchase of an annuity, or a ground rent, if a *bona fide* sale, has never been considered as usurious, though more than six per cent. profit be secured; yet it is manifest, that if giving this form to the contract will afford a cover which conceals it from judicial investigation, the statute would become a dead letter. Courts, therefore, have recognized the necessity of disregarding the form, and examining into the real nature of the transaction; and if that be in fact a loan, no shift or device will protect it. And as in such cases the original intention of the parties can seldom be arrived at except by resort to matters *de hors* the particular instruments of writing executed by them, extrinsic evidence must be received to show the real nature and intent of the transaction. *Tyson vs. Rickard*, 3 *H. & J.*, 109, 114; *Andrews vs. Poe*, 30 *Md.*, 486.

Now, as we have already seen, the original proposition was for a loan of $30,000 on mortgage, and it is a fact uncontroverted that $30,000 was the real sum advanced by the Denisons to the Sewells; and yet the deed states the consideration to be $31,500. In the consummation of the transaction, Denison goes through the form of draw-

ing and passing his check to Rogers for the exact amount of the consideration mentioned in the deed, and of receiving from Rogers, in the way of a drawback, the check of the latter for $1,500. Why this exact conformity to the *apparent* requirement of the deed, and the taking the drawback of $1,500, if the transaction was really intended to be without disguise, and was in fact nothing more than the purchase of a ground rent? It would appear that the rent fixed by the lease was adjusted to the consideration mentioned in the deed, at the rate of six per cent. per annum; and that being so, rent was required to be paid in respect to $1,500, of the price of the ground rent that had never been received by the parties selling it; and in the redemption of the property from the charge of the rent, they would be required to pay $1,500 more than the actual consideration received by them. In other words, the sum of $1,500 has been added as part of the consideration mentioned in the deed, but which was merely a *bonus* for the advance of $30,000, over and above the interest secured on the latter sum.

Viewing, then, the whole transaction together, with all of its attendant circumstances, we cannot resist the conclusion, that it amounted to, and was in fact, a loan of $30,000 at an usurious rate of interest, and that the Court below was right in so declaring in its opinion.

In the case of *Tyson vs. Rickard*, 3 *H. & J.*, 109, where the form of the transaction and the attendant facts were very similar to those of the present case, upon the finding of the jury that the transaction was in reality but a loan of money, at an excessive rate of interest, the Court held it to be a violation of the statute against usury, and, as the law then existed, the contract was declared void. And in the case of *Lloyd vs. Scott*, 4 *Pet.*, 205, and same case in 9 *Pet.*, 419, in which was involved a transaction of a similar character to the present, and where the whole subject underwent a most thorough examination upon

principle and authority, it was held by the Supreme Court, that though the transaction had the form, as in this case, of a sale and purchase of a rent-charge or ground rent, but which was found to be in intent a loan, infected with usury, it was therefore condemned by the law, and was void. See, also *Wetter vs. Hardesty*, 16 *Md.*, 11, and 49 *Md.*, 524.

It is insisted, however, that notwithstanding the transaction may be found to be a loan of money, and infected with usury, yet, as the defendant was entirely innocent of any participation in the original transaction, and was without knowledge of any illegality therein at the time she accepted the transfer of this ground rent to her, by Denison as surviving trustee, the complainants have no equity for relief as against her, and that she cannot be affected by the usury that may be found to exist. But this position cannot for a moment be sustained. No principle is better settled, than that usurious securities are not only affected, as between the original parties to the transaction, but the illegality or taint of their inception follows and affects them in the hands of third persons, even though they be ignorant and innocent holders thereof. *Lloyd vs. Scott*, 4 *Pet.*, 228, and the authorities there quoted; *Andrews vs. Poe*, 30 *Md.*, 485, 488. This general principle is, to a certain extent, and with respect to certain securities, modified in this State by statute; but the modification has no application here. By the Code, Art. 95, sec. 2, the assignee or holder, whether legal or equitable, of any bond, bill obligatory, bill of exchange, promissory note, or other negotiable instrument, acquiring such instrument for a *bona fide* and legal consideration, without notice of any usury in the creation or subsequent assignment thereof, is, by the express terms of the statute, exempt from the effects of such usury, and the operation of the general principle just stated. But the defendant here is not the holder of any such instrument, and there-

fore she is not embraced by this section of the statute. The general principle applies to her as assignee; and though the whole debt or claim is not forfeited and rendered void, as under the law prior to the Act of 1845, all interest reserved or stipulated to be paid in excess of six per cent. per annum on the principal sum is forbidden to be received, and is declared to be forfeited; and the contract, to the extent of the excessive or usurious interest to be paid, is still made void, and the policy of the former law in *that respect* remains unaltered. *Scott vs. Leary*, 34 *Md.*, 389; *Thomas vs. Watson, Taney's C. C. Dec.*, 307.

Nor can the fact, that the transfer of the title to the property, and of the impeached ground rent thereon was made to the defendant by her trustee under the sanction, or by the direction of a Court of equity, in the division of the trust estate among those entitled, in any manner affect the question involved in this case. The present complainants were not parties to that proceeding, and the question now raised was in no manner disclosed to, or passed upon, by the Court. The defendant, therefore, must stand in the shoes of her trustees, under whom she holds, and can occupy no better ground in respect to the transaction involved than they could do if they were parties to the present proceeding.

With these views, it follows that the complainants are entitled to relief; and while this Court concurs with the Court below in the conclusion that the transaction was an usurious loan of money, it cannot concur in all the terms and provisions of the decree that was passed. Being but the loan of money at an usurious rate, as distinguished from a real, *bona fide*, sale and purchase of a ground rent, the yearly or quarterly dues should be collected as interest, and not as rent by the extraordinary proceeding of distress. The complainants are entitled to have their property relieved of the operation of the instruments made to give effect to an illegal transaction; and to this

end, they are entitled, upon bringing into Court to be paid to the defendant, the principal sum of $30,000, with all interest due thereon, at the rate of six per cent. per annum, to have those instruments brought in to be cancelled.

We shall therefore reverse the decree, and remand the cause, to the end that such further proceedings may be had, as will lead to and effect the result just stated, as embracing the rights of the parties concerned.

*Decree reversed, and*
*cause remanded.*
