META PACKARD, by her husband and next friend, JOSEPH PACKARD, JR. *vs.* THE CORPORATION FOR RELIEF OF THE WIDOWS AND CHILDREN OF THE CLERGY OF THE PROTESTANT EPISCOPAL CHURCH IN MARYLAND.

*Construction of Lease—Covenant for Redemption—Mortgage.*

On the 20th of June, 1853, H. and B. for $4,500 conveyed to W. certain property in Baltimore City. The deed contained the following statement: "Whereas the said H. did heretofore agree to lease unto the said B. the property hereinafter described for the term of ninety-nine years renewable forever; and whereas the said H. hath at the request of the said B. sold and agreed to convey said property to the said W. at and for the sum of $4,500, the said B. joining in the execution hereof for the purpose of conveying and assuring to said W. all his estate and interest under said agreement to lease: Now," &c. On the same day W. and wife in consideration of the sum of $1000 to them paid by B., and the payment of the rent and "performance of the covenants, conditions and agreements" mentioned in the indenture, to be paid and performed by said B. conveyed the said property to said B. to have and to hold the same from the day next "before the day of the date of these presents for and during and until the end of the term of ninety-nine years * * * yielding and paying therefor the yearly rent of two hundred and ten dollars accounting from the 20th day of June, 1853, and payable thereafter in quarterly instalments * * * during the continuance of this demise, and that free and clear of all deductions for taxes." The deed contained the covenants usual in leases, and among others the following: "The said W. * * * shall and will at any time after the expiration of ten years from the date hereof, and within one year thereafter, and during the continuance of this demise * * * on the payment to him by said B. of the sum of $3,500, and all arrears of rent," &c., "execute to the said B.," &c., a deed of and for the reversion and fee of and in the said property free from the rent reserved, and the said covenants, and all incumbrances

Packard *vs.* Corporation for Relief of the Widows, &c.

suffered by the said W., &c. By certain mesne conveyances the leasehold estate became vested in the complainant, and by deed of W. and wife dated the 3rd of October, 1861, in consideration of $3,000, the defendant became entitled to the reversion "with the right to collect the ground rent, at the times above stated, and with the usual covenants." In the general assessment of property in Baltimore City made in the year 1852, a lot of which the property above mentioned was a part, was assessed to H. as vacant ground, and taxes were paid on it accordingly in the years 1852 and 1853. During the year 1853, improvements on this lot were assessed to B. for taxation in 1854; and the property was then transferred to the name of B. On a bill filed by the complainant against the defendant, asking that the deed, from W. and wife to B. be declared a mortgage, and that the complainant be permitted to redeem on payment to the defendant of all accrued rent or interest, it was HELD:

1st. That upon a fair and proper construction of the covenant for redemption, the lease was not redeemable at the pleasure of the tenant from its date, or after the expiration of ten years, but only one year after the expiration of ten years from the date of the deed.

2nd. That the deed should not be construed as a mortgage to secure the payment of $3,500, the circumstances in the case not showing that the instrument was not intended by the parties to be what it purports to be—a lease of the ground.

APPEAL from the Circuit Court of Baltimore City.

The bill was filed by the appellant against the appellee asking that a certain deed of lease be declared a mortgage, and that the plaintiff be declared entitled to her equity of redemption. The Court below (DENNIS, J.,) passed a decree dismissing the bill, and the plaintiff appealed. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, and BRISCOE, J.

*Thomas S. Baer*, and *Joseph Packard, Jr.*, (with whom was *Richard M. Venable*, on the brief,) for the appellant.

*Charles Handfield Wyatt*, for the appellee.

PAGE, J., delivered the opinion of the Court.

On the twentieth of June, 1853, John Eager Howard and Garrett Brown, in consideration of the sum of $4,500, conveyed to Franklin Wilson certain property situate in Baltimore City. The deed contains the following statement: "Whereas the said John Eager Howard did heretofore agree to lease unto the said Garrett Brown, the property hereinafter described, for the term of ninety-nine years renewable forever; and whereas, the said John Eager Howard hath, at *the request of the* said Garrett Brown, sold and agreed to convey said property to the said Franklin Wilson, at and for the sum of $4,500, the said Garrett Brown joining in the execution hereof, for the purpose of conveying and assuring to said Franklin Wilson, all his estate and interest under said agreement to lease. Now, &c." On the same day Wilson and wife, in consideration of the sum of one thousand dollars to them paid by Garrett Brown, and the payment of the rent and "performance of the covenants, conditions, and agreements" mentioned in the indenture, to be paid and performed by said Brown, conveyed the said property to Garrett Brown, to have and to hold the same, "from the day next before the day of the date of these presents, for and during and until the end of the term of ninety-nine years, * * yielding and paying therefor the yearly rent of two hundred and ten dollars, accounting from the 20th day of June, 1853, and payable thereafter in quarterly instalments * * * during the continuance of this demise; and that free and clear of all deductions for taxes, &c." The deed contains the covenants usual in leases, and among others, the fol-

lowing: "The said Franklin Wilson, &c., * * * * shall and will at any time after the expiration of ten years from the date hereof and within one year thereafter, and during the continuance of this demise * * on payment to him by said Brown, of the sum of three thousand five hundred dollars, and all arrears of rent, &c., execute to the said Brown, &c., a deed of and for the reversion and fee of and in the said property, free from the rent reserved and the said covenants and all incumbrances suffered by the said Wilson, &c. By an agreement of parties, it also appears, that by certain *mesne* conveyances specially set out in the record, the leasehold estate has become vested in the complainant, and by deed of Franklin Wilson and wife, bearing date the third day of October, 1861, in consideration of the sum of three thousand dollars, the respondent became entitled to the reversion, "with the right to collect the ground rent at the times above stated, and with the usual covenants." The parties also agree "that in the general assessment of property in Baltimore City, made in the year 1852, a lot, of which the property referred to in this cause is a part, was assessed to John Eager Howard as vacant ground, and taxes were paid on it accordingly in the years 1852 and 1853; and that during the year 1853 improvements on this lot were assessed to G. Brown at $7,000 for taxation in 1854; and that the taxes on the improvements were first paid for the year 1854, and the property was then transferred to the name of Garrett Brown."

Upon this state of facts it is contended by the appellant, first, that the deed from Franklin Wilson and wife to Garrett Brown should be construed to be a mortgage; or, second, that by a proper construction of the covenant for redemption, the complainant has a right to redeem at any time during the continuance of the lease, after the expiration of ten years from the date thereof; and that in either view of the case she should be allowed to

redeem immediately upon the payment to the defendant of three thousand five hundred dollars and all accrued rent or interest.

We will first consider the second of these contentions. The covenant to be construed is in these words: "That the said Franklin Wilson, his heirs or assigns, *shall and will at any time, after the expiration of ten years from the date hereof, and within one year thereafter, and during the continuance of this demise,* at the request, &c.," of Brown, and on his paying $3,500 and all accrued rent, &c., execute a deed to Brown of the reversion and fee of the said property, &c. The complainant contends that under a proper construction of this clause, the words, "and during the continuance of this lease," enlarge the period of redemption from one year after the expiration of the first ten, to any time after the expiration of ten years from the date of the lease. In construing written instruments, it is a familiar rule, that it is the intention of the parties which must be sought for, and this intention is to be collected from the whole deed, and given effect, if not repugnant to some principle of law. *Buchanan's Lessee vs. Steuart*, 3 *H. & J.*, 329; *Hope vs. Hutchins*, 9 *G. & J.*, 77.

If the intention of the parties is plainly manifest upon the face of the instrument, there is no room for interpretation. *Md. Coal Co. vs. Cumb. & Penn. R. R. Co.*, 41 *Md.*, 343. If there *is any doubt* about the matter the deed is to be construed most favorably for the grantee. *Howard vs. Rogers*, 4 *H. & J.*, 278.

Construing this clause in accordance with these fundamental rules, we are unable to adopt the contention of the appellant. The usual and ordinary function of the word "and" is to join the sentence which follows it, to the one which precedes, and we find no reason why the parties did not intend to employ it according to its natural acceptation. Its effect, therefore, in its use in

this clause, was to make these several sentences cumulative, so that the redemption should not occur, unless three conditions existed, viz., it must be after the expiration of ten years from the date of the lease, within one year thereafter, *and* during the continuance of the lease. The words "and during the continuance of the lease" were evidently inserted out of abundant caution, to prevent a claim to the right of redemption being set up, even though under preceding covenants, or from any cause whatever, the lease had terminated. Such a thing was indeed impossible. And the words themselves may therefore be surplusage, but to construe them as providing for the right of redemption at the will of the lessee at any time after the expiration of the ten years, would require the absolute nullification of the words "and within one year thereafter." And indeed we see no reason why if the construction claimed by the appellant is to be permitted to override the second clause of the covenant, it should not also have the same effect as to the first, and we would then have the singular result of converting the lease into one redeemable at any time after its date, at the pleasure of the lessee. It is impossible to suppose that the parties meant, after providing in clear language for the redemption within one year after the expiration of the ten, to add a clause which would render entirely useless the privilege so carefully granted. It is far more reasonable to suppose these words were inserted out of excessive, though perhaps unnecessary caution. We agree with the learned Judge below when he says in his opinion: "To adopt the plaintiffs' construction would be to give to the word 'and' a forced and unnatural meaning, and to create an inconsistency where none exists; * * while by giving to 'and' its usual meaning, the whole language can stand together and full effect be given to every provision." We are of the opinion, therefore, that, upon a fair and

proper construction of this covenant, this lease was not redeemable at the pleasure of the tenant from its date, or after the expiration of ten years, but only within one year after the expiration of ten years from the date of the deed.

We come now to the other question presented by this record: Ought this lease, under all the circumstances brought to our attention, to be construed as a mortgage, and the appellant allowed to redeem upon payment of $3500 and accrued rents? Upon its face it is an ·ordinary lease for ninety-nine years, renewable forever, redeemable at any time within one year after the expiration of ten years from its date, with the covenants usual in instruments of that kind; and unless the Court can find from all the circumstances of the case, that it was not intended by the parties to be what it purports, but was in fact a mere security for the payment of money loaned, it must retain the character which the parties who made it chose to impress upon it. It is true that a ground rent redeemable at a definite future is in Baltimore "a common and ordinary form of securing a loan of money," and also has many features in common with those of a mortgage; indeed, is often "practically nothing more than a mortgage to secure a principal sum, the interest of which is placed in the form of an annual rent." *Posner Brothers vs. Bayless,* 59 *Md.*, 60. But notwithstanding this, the legal effect of a lease is not the same as that of a mortgage. In the former case, the lessee purchases his estate upon the consideration of an annual rent, with the privilege of buying in the reversion at the time and for the amount stipulated in the instrument. There is no obligation upon the lessee to redeem, and he cannot do so, except strictly in accordance with the terms of his contract; and if he should fail either by neglect or refusal, to buy in the reversion, the lessor has no ground for

complaint, because the relation of debtor and creditor, except as to the payment of the stipulated rent, does not exist between them.    In the case of a mortgage however, the relation of debtor and creditor is an essential condition, and the instrument is executed by the debtor in favor of the creditor, for the sole purpose of securing the indebtedness.    The estate granted is absolute in form, but subject to a proviso by which the conveyance is to become void upon payment to the creditor of the amount due him.    Such a grant in a Court of equity is always regarded as a mere security for the payment of the debt.    *Bank of Commerce vs. Lanahan, Trustee,* 45 *Md.,* 396; *Jamieson vs. Bruce,* 6 *G. & J.,* 72.

But notwithstanding, there are these fundamental differences in the nature of the two kinds of instruments, it is a well settled rule, that to prevent fraud "Courts of equity will regard the substance, and not the form, of agreements and other instruments, and will give them the precise effect which the parties intended, no matter how or in what form that intention may be expressed." *Johns Hopkins University vs. Williams, Ex'r, &c.,* 52 *Md.,* 240.

In order however to give an instrument an effect even in a Court of equity, different from that which its form and the words used, naturally and legally imply, there must be in a case of this kind, as was said in the case of *Montague vs. Sewell,* 57 *Md.,* 412, such "well established facts,   *   *   which cannot be satisfactorily accounted for upon any other theory than that the transaction was a loan."    When such facts create a doubt "the inclination of the Court is so to treat it, and allow the party to redeem."    *Hinkley, Ex'r, et al. vs. Wheelwright, Adm'r,* 29 *Md.,* 341.

"And," again citing from *Montague vs. Sewell, supra,* "as in such cases the original intention of the parties can seldom be arrived at except by resort to matters *de*

*hors* the particular instruments of writing executed by them, extrinsic evidence must be received to show the real nature and intent of the transaction." *Baugher vs. Merryman,* 32 *Md.,* 185; *Artz and Wife vs. Grove,* 21 *Md.,* 456.

· What then was the nature and intent of this transaction, as determined by the circumstances of the case? Was it to create a ground rent; or did Brown in fact purchase the property from Howard in fee and not having the whole of the required purchase money, borrowed the thirty-five hundred dollars and executed the lease to secure its repayment?

The business, which finally terminated with the making of the lease, originated in an agreement between John Eager Howard and Garrett Brown for a lease to the latter of the property for ninety-nine years, renewable forever. This agreement must have been made prior to the twentieth of June, 1853, for in Howard's deed of that date it is referred to as having theretofore existed. By the agreement of counsel it appears that in the years 1852 and 1853 Howard paid taxes on property, of which that referred to in this cause is a part, as vacant ground, and that during 1853, improvements on this lot were assessed to Brown for taxation in 1854. From the fact that no improvements were assessed to Howard, it may be inferred that there were none on the lot at the time he parted with his title. And if this be so, it is clear that Brown must have begun improving immediately upon acquiring the title, because the assessments were made in the year 1853; and in that event we are warranted in supposing that the making of these improvements was the object he had in view from the beginning of the business. Why the agreement between Brown and Howard for a lease, was not consummated must be left to conjecture. The difficulties in the way, however, whatsoever they were, seem to have been met through the interven-

tion of Mr. Wilson.  Brown made a new arrangement
with Howard, and under it the latter "at the request"
of the former, sold and agreed to convey the property to
Wilson for the sum of $4,500.  This was paid, and a
deed in fee immediately executed and delivered to Wil-
son, in which both Howard and Brown joined.  That
Wilson thus became the holder of the fee after, and in
consequence of, an understanding with Brown, by which
the latter was to acquire the possession of the lot, pre-
sumably, as we have seen, for the purpose of improving
it, is clear from the fact, that immediately upon the re-
ceipt of his deed from Howard, Wilson executed the
lease now under consideration.  But what was the mo-
tive that actuated Wilson?  Was it merely to make a
loan to Brown?  A loan, for the extended period of ten
years, to enable Brown to carry out objects and purposes
in which Wilson had no participation?  That this long
credit was given, without special circumstances tending
to explain it, is a strong fact, indicating that Wilson
did not regard the transaction as a loan.  If on the other
hand, he desired to secure a ground rent as an invest-
ment, that which was actually done, appears to us, to
be only what, under all the circumstances as they then
existed, was prudent and reasonable.

The lot was vacant; its value, as fixed by Howard's
deed was forty-five hundred dollars.  Under a lease con-
taining no covenants for the erection of buildings or other
improvements, thereby enhancing the value of the lot
and rendering the payment of the rent secure, he could
not afford to leave upon the property this entire amount.
To be sure, such covenants could have been made, but, if
the parties did not agree that such should be incorporated
in the lease, there was nothing left for Wilson to demand,
but that the margin between the capitalization of the
rent reserved, and the market value of the lot should be
such as to render him secure against loss by reason of the

non-payment of rents and possible depreciation in the value of the property. And this is exactly what was done. Brown paid Wilson one thousand dollars, and the rent reserved was fixed at $210, which capitalized at six per cent. was equal to $3,500. A margin of one thousand dollars was thus left, to protect Wilson against any possible loss, in case he should be compelled to take the property back, because of the non-payment of the rent or for any other reason. That the lease is contemporaneous with the deed from Howard; or that the rent reserved is equal to the interest on the sum for which it may be redeemed; or that this sum, together with the cash amount paid, is the full value of the lot, whether taken together or separately, are not controllable facts, when the transaction appears to be otherwise valid and free from objection. They may be taken in connection "with other facts and circumstances of the case, when they all tend to the same conclusion." *Montague vs. Sewell, (supra,)* 414.

The case of *Bosley vs. Bosley*, 14 *Howard*, 396, has been strongly pressed upon us as affecting the decision in this case. But we do not so regard it. In that case the testator, after sundry specific devises and bequests, devised and bequeathed all his lands and other real estate situate in certain counties in Maryland and elsewhere, to his wife in trust, &c. At the time of making his will the testator held certain lands in Baltimore County, which were part of the land specifically devised in the residuary clause of his will. Subsequently he added a codicil to the will, and later still, he entered "into a contract with a certain Horatio G. Armstrong, whereby he covenanted that in consideration of the payment of two thousand dollars at the time specified in the agreement, and the annual ground rent of $210, payable semi-annually, he would lease the said land to Armstrong, for ninety-nine years, renewable forever,

with the right to the said Armstrong to extinguish the ground rent *at any time* upon the payment of $3500." The testator having died, the cash payments were made to his widow, and the lease was executed by her according to the terms of the contract. The question before the Court was whether this contract was an implied revocation of the devise in the will. After laying down a rule to the effect, "that a valid *agreement* or *covenant* to *convey,* which equity will specifically enforce, will operate in equity as a revocation of a previous devise of land," the Court proceeds to point out how the "interest which the testator had in this land at the time of making his will was converted into money" by the contract; that it was "a sale and an agreement *to convey his whole interest;*" that the form of the contract was one in familiar use in the City of Baltimore, where it "nearly, if not altogether, superseded the old forms of contract, where the vendor conveyed the lands and took a mortgage to secure the payment of the purchase money, or gave his bond for the conveyance and retained the title in himself until the purchase money was paid;" and, after explaining the advantages which recommend this form of contract, the Court continues, "when it must be admitted that a sale in which a bond of conveyance is given, and the title retained by the vendor, &c., is in *equity a revocation,* there seems to be no good reason for *holding otherwise* in the case before us, where the vendor is *equally bound to convey* when the whole purchase money is paid;" * * "if the purchaser's omission to pay prevents the contract from being a revocation, the validity of the devise is made to depend, not upon the will or the act of a testator, but that of a stranger, over which the testator has no control." It was held, therefore, that the devise in question was revoked by the contract, not because the contract was a mortgage, but because by its terms Bosley *was bound to convey whenever*

Armstrong elected to pay the stipulated sum.　The lease provided for by the contract in that case, was one redeemable at the will of the lessee; here it is redeemable only during a fixed and definite period, which has passed.　Nor do the Supreme Court hold that the lease was not, what on its face it purported to be; they decide that Armstrong has the right of redemption at any time on payment of the money, because by the terms of the contract it is so provided, and that by reason of the further fact that Bosley had bound himself to convey whenever Armstrong chose to redeem, the contract worked a revocation of the devise.

The appellee appears to have had no notice of any contract between Wilson and Brown, except so far as it is shown on the face of the deed; and inasmuch as it does not there so appear, it must be protected as a purchaser of a title good upon the face of the deed as recorded, without notice to the contrary.

Entertaining these views, the decree of the Court must be sustained.

*Decree affirmed.*