# SARAH G. ROSENSTOCK *vs.* HENRY T. KEYSER,
## ET AL.

*Mortgage Satisfied by the Creation of a Ground Rent—Redemption—
Rent not Intended as a Security for a Debt.*

In 1835 the owner of a lot of ground in fee simple mortgaged it to an Insurance Company to secure a. loan of $7,000. The mortgagor died, and his will authorized his executor to sell said property, without making a sacrifice, to the end that his debts might be paid. Afterwards the Insurance Company, mortgagee, obtained in 1843, a decree for the sale of the mortgaged property. Then the executor of the mortgagor reported to the Orphans' Court a sale of the property to one K. for the sum of $7,000, upon the understanding that K. would execute a lease of the property to the executor, to be held under the will, for ninety-nine years renewable forever, subject to an annual irredeemable ground rent of $420 being six per cent. on the said $7,000. The devisees of the mortgagor assented to the sale which was duly ratified. On May 15th, 1843, the insurance Company, mortgagee, executed a release of the mortgage to the executor, and the executor made a deed conveying ·the land in fee to K., and K. executed a lease thereof for ninety-nine years to the executor subject to the said ground rent. On the same day on which these conveyances were recorded, the foreclosure decree was entered satisfied. The release from the Insurance Company and the deed from the executor to K. recited that the intention of the parties was that the executor should convey an unincumbered title to K.,

so that K. might make the lease for ninety-nine years contemplated by the agreement, and that the consideration to K. for his payment of the mortgage debt to the Insurance Company, was the annual ground rent agreed to be created on the property conveyed. The ground rent continued to be paid to K. and those claiming under him down to the present time, and the leasehold interest became vested in the plaintiff. More than sixty years after the creation as above mentioned, of the ground rent, the plaintiff filed the bill in this case, alleging that the object and effect of the said deed by the executor to K. and the lease by the latter was merely to transfer the mortgage from the Insurance Company to K. and keep it alive in the form of an annuity, and the bill asked that these conveyances be decreed a mortgage, and that the plaintiff be allowed to redeem on the payment of the sum for which the original lessor purchased the fee simple title to the land. There was no evidence in the case as to the intention of the parties other than the said conveyances. *Held*, that it was not the intention of the parties to keep the mortgage alive in the form of a ground rent, but they designed that K. should pay the mortgage and receive in consideration thereof an irredeemable rent, and that consequently the plaintiff is not entitled to redeem such rent upon the theory that it was designed as security for a debt.

*Decided November 16th, 1906.*

Appeal from the Circuit Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE JJ.

*George R. Willis* and *Luther M. R. Willis* (with whom was *James McElvoy, Jr.,* on the brief), for the appellant.

*John J. Donaldson* (with whom was *John M. Heighe* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

In the year, 1835, John McKeen, the elder, being the owner in fee of the lot of ground and improvements involved in this cause, conveyed the same by way of mortgage to the American Life Insurance and Trust Company to secure the repayment of the sum of $7,000, loaned by said company to him. This mortgage was dated on the 31st day of October, 1835, and was

payable in five years from its date. The mortgage contained the usual consent to a decree for sale under the Act of 1833. Default having occurred in the covenants and conditions of the mortgage, the mortgagee on the 27th day of January, 1843, in accordance with the provisions of the mortgage, procured a decree in the Baltimore County Court, sitting as a Court of equity, for the sale of the mortgaged premises.

John McKeen had died prior to the date of this decree, leaving a last will and testament dated the 3rd day of September, 1833, and duly admitted to probate by the Orphans' Court of Baltimore County on the 1st day of January, 1840. He appointed John McClellan and his son, John McKeen, to be the executors of his will. John McKeen qualified as executor, but McClellan renounced his right to letters upon the estate. The will contains the following provision: "I order and direct all my just debts and funeral expenses to be fully satisfied and paid out of my estate; and to effect it I do hereby fully authorize, empower, and direct my executors hereinafter named, or the survivor or acting one of them, to sell and dispose of, at public or private sale, as soon as practicable, after my decease, without making a sacrifice of the same, my house and lot of ground and premises situate and froating on the north side of Baltimore street in said city of Baltimore, and extending back to McClellan's alley, together with the rights and appurtenances; and upon receipt of the purchase money, make, execute, acknowledge, and deliver in due form of law, to the purchaser or purchasers thereof, his, her, or their heirs, executors, administrators, and assigns, one or more good and sufficient deed or deeds of conveyance or assignment for the same, as fully and effectually as I myself might or could do." The lot mentioned in this paragraph is the one we are dealing with in this case.

On the 2nd day of February, 1843, John McKeen, the executor of the will, filed in the Orphans' Court of Baltimore County a report of sale of said lot. In this report he stated that in pursuance of the power and authority given him by said will he had sold said lot on the 1st day of February,

1843, to Michael F. Keyser, for the sum of $7,000 cash "with the understanding and agreement that the said Michael F. Keyser shall execute a lease of said property for ninety-nine years, renewable forever with the usual covenants to the said executor to hold as the said property was held by him under said will, subject to the annual ground rent of $420, payable quarterly, being six per cent on said $7,000." Attached to this report was the following assent by the widow and devisees of John McKeen: "We the undersigned, being the widow and devisees of John McKeen, late of Baltimore City, deceased, do give our assent to the agreement made by the executor of said deceased with Michael F. Keyser, *by which the said Keyser is to give $7,000 for a ground rent to be created on the property on Market street mentioned in the will, of $420*, by conveying said property to said Keyser, and taking a lease from him thereof for ninety-nine years renewable with the usual covenants at the yearly rent of $420, payable quarterly, said leasehold interest to be held for the purposes mentioned in the will." After due publication of the usual order of *nisi* the sale was finally ratified and confirmed by the Orphans' Court on the 4th day of April, 1843.

On the 15th day of May, 1843, the following conveyances were executed and delivered between the parties, viz, 1st: A deed in fee from John McKeen, executor, to Michael F. Keyser. 2nd. A lease from Michael F. Keyser to John McKeen, executor. 3rd. A release of mortgage, in which Michael F. Keyser joined, from the American Life Insurance and Trust Company to John McKeen, executor. The conveyances were all recorded on the 19th day of June, 1843, in the following order: First, the release of mortgage; second, the deed, and third the lease. On the same day the decree of foreclosure, which had been entered to the use of Keyser on the day of the sale by John McKeen to him of the mortgaged property, were entered satisfied. The release of mortgage from the American Life Insurance and Trust Company to John McKeen, executor, contains these recitals: "And whereas the said Michael F. Keyser, having paid to said company the

amount of said mortgage, the said decree was entered to his use, and whereas the consideration for such payment by the said Michael F. Keyser was an annuity for annual ground rent of $420, clear of all deductions for taxes and assessments of every kind whatever payable out of the said mortgaged premises, the deeds to create which are prepared to be executed of even date, with and after these presents, *and to carry out the intention of the parties so that the said John Mc-Keen may have a perfect and unencumbered title to convey to the said Michael F. Keyser, so that the latter may make the lease for ninety-nine years, contemplated as aforesaid, these presents are executed.*"

The deed from John McKeen to Michael F. Keyser contains substantially the same recital. After stating that Michael F. Keyser had paid to the Insurance Company the amount of the mortgage, and that the decree had been entered to his use, it recites that "the consideration to the said Michael F. Keyser for such payment was an annuity or annual ground rent of $420.00 agreed to be created on the property so as aforesaid mortgaged clear of all deductions for taxes and assessments of every kind whatever, and whereas *to carry out the intention of the parties the executor on the 1st day of February, 1843, sold and disposed of the said premises to the said Michael F. Keyser, &c.*"

By the lease the property was demised to John McKeen, executor, for the term of ninety-nine years, renewable forever, but contained no provision or covenant for redemption. At the end of the lease there is found the following memorandum: "And it is declared hereby at the request of the said John McKeen that he takes as lessee under this instrument of writing the property hereby demised to hold subject to the same trusts and interests as are expressed and declared in and by the last will and testament of the said John McKeen, deceased, the testator of said executor agreeably to the report made by said executor as such to the Orphans'. Court of Baltimore County on the 2nd day of February, 1843, and finally ratified on the 4th of April, thereafter."

In August, 1866, more than twenty-three years after the creation of the ground rent, John McKeen and others executed a bond of conveyance of the leasehold lot to Gerson Rosenstock, the plaintiff's testator. Gerson Rosenstock died in 1880, and in 1882 the leasehold interest was duly assigned to his executor. Under the will of Gerson Rosenstock, the plaintiff, Sarah G. Rosenstock, acquired a life estate in said leasehold. The rent reserved in the lease of May 15th, 1843, has been regularly paid to the lessor, Michael F. Keyser, and to those claiming under him, as its several installments have accrued, and no objection of any kind or claim, of exemption from the obligation to pay the same was ever made by the original lessee, or those claiming under him, until the institution of this suit, which was brought more than sixty years after the creation of the ground rent, and long after the death of those who were best acquainted with all the facts and circumstances attending the transaction.

The object of the bill is to obtain a decree declaring that the deed from McKeen, executor, and others to Keyser and the lease from Keyser to McKeen, executor, had "the force and effect only of transferring the mortgage formerly held by the American Life Insurance and Trust Company to the said Michael F. Keyser." The ground upon which this relief is asked is stated in the 8th paragraph of the bill to be: "That the object and effect of said sale to the said Michael F. Keyser, and the said lease from him to the said John Mc-Keen, executor, was merely to transfer the said mortgage from the former mortgagee, the American Life Insurance and Trust Company to himself, and to keep the same alive in the form of a perpetual annuity." This allegation is denied by the defendants. The Court below dismissed the bill, and the plaintiff has appealed.

We have stated all of the important facts in the case, and the question is, whether, upon these facts, the plaintiff is entitled to the relief prayed for. The principle which is to be applied in dealing with that question is well settled and free from difficulty. It is thus stated in *Pom. Eq. Juris.*, vol. 3,

sec. 1196: "Any conveyance of land absolute on its face without anything in its terms to indicate that it is otherwise than an absolute conveyance, and without any accompanying written defeasance, contract of re-purchase, or other agreement, may in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage as between the original parties, and as against all those deriving title from or under the grantee, who are not *bona fide* purchasers for value and without notice. The principle which underlies this doctrine is the fruitful source of many other equitable rules—that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance of the title, which had been intentionally given to him, and which he had knowingly accepted, merely as a security and therefore in reality a mortgage. The general doctrine is fully established, and certainly prevails in a great majority of States, that the grantor and his representatives are always allowed in equity to show, by parol evidence, that a deed absolute on its face was only intended to be a security for the payment of a debt, and thus to be a mortgage, although the parties deliberately and knowingly executed the instrument in its existing form, and without any allegations of fraud, mistake, or accident in its mode of execution. As in the last preceding case, the sure test and essential requisite are the continued existence of a debt. If there is no indebtedness, the conveyance cannot be a mortgage; if there is a debt existing and the conveyance was intended to secure its payment, equity will regard and treat the absolute deed as a mortgage. The presumption of course arises that the instrument is, what it purports on its face to be, an absolute conveyance of the land; to overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail."

The doctrine stated by Mr. Pomeroy was recognized in this State as early as the case of *Brogden* v. *Walker*, 2 H. & J. 285, and has been uniformly applied to cases like the one under consideration. It was stated and applied in *Thompson* v.

*Banks*, 2 Md. Ch. 431; *Wetter* v. *Hardesty*, 16 Md. 14; *Hinkley* v. *Wheelwright*, 29 Md. 341; *Hopper* v. *Smyser*, 90 Md. 364; *Montague* v. *Sewell*, 57 Md. 414; *N. C. Ry. Co.* v. *Herring*, 93 Md. 164.   In *Thompson* v. *Banks, supra*, it was said that "there can be no doubt, that upon proper averments *and upon sufficient evidence*, this Court may treat an absolute deed, as a mortgage, and decree a redemption of the property by the mortgagor, or solely for the purpose of paying the sum due." In *Montague* v. *Sewell, supra*, the Court said that where the instrument purports to be an absolute sale, and an attempt was made to change its character, "the original intention of the parties can seldom be arrived at except by resort to matters *dehors* the particular instruments executed by them."   In the case of *Packard* v. *The Corporation for the Relief of Widows*, 77 Md. 246, which was a proceeding to declare a deed absolute upon its face, to be a mortgage, it was said, "that unless the Court can find from all the circumstances of the case, that it was not intended by the parties to be what it purports, but was in fact a mere security for the payment of money loaned, it must retain the character which the parties who made it chose to impress upon it," and the Court further said that "in order, however, to give an instrument an effect, even in a Court of equity, different from that which its form and words used, naturally and legally imply, there must be in a case of this kind, as was said in the case of *Montague* v. *Sewell, supra*, 57 Md. 412, such "well established facts   *   *   * which cannot be satisfactorily accounted for upon any other theory than that the transaction was a loan."

The question therefore in its last analysis comes to this: Was it the intention of the parties to the deed and lease that those instruments, were to operate, as stated in the bill, merely to transfer the mortgage from the American Life Insurance and Trust Company to Keyser, and to keep it alive in the form of a ground rent, or was it their intention that Keyser should pay the mortgage, buy the property, and in consideration to him for such payment and purchase the ground rent or annuity mentioned should be created by the execution

and delivery of the deed and lease? If they intended the former, the plaintiff is entitled to relief; if the latter the relief sought must be denied. There was no oral evidence offered by the plaintiff to show the intention of the parties aside from that expressed by the instruments, and the Court must ascertain that intention by an examination of the documentary evidence filed in the case. Looking at the instruments to gather therefrom the intention of the parties, it must be borne in mind that if the intention of the parties is plainly manifest upon the face of the conveyances there is no room for interpretation, and there is nothing left for the Court but to carry into effect the intention of the parties so ascertained, unless prevented from so doing by public policy, or by some established principle of law. *Md. Coal Company* v. *Cumb. & Penn. R. R. Co.*, 41 Md. 352.

When the report of sale, the assent thereto of the widow and devisees of John McKeen, and the other documents are examined in the light of this principle, we fail to find that they support the plaintiff's contention. Nothing is to be found to warrant the Court in giving the instruments a character and effect different from that which the parties themselves gave them. There is certainly nothing in the transaction that would exclude the hypothesis that the parties intended to create a ground rent, and surely it cannot be said that the documentary evidence is sufficient to show that the transaction "cannot be satisfactorily accounted for upon any other theory than that it was a loan." Indeed the form in which the transaction was put is entirely consistent with a purpose to do what the instruments in terms declare it to be the intention of the parties to do, viz., to create an annuity or annual ground rent upon the property on which the Trust Company had theretofore held a mortgage. It follows that, entertaining these views, the decree of the Circuit Court of Baltimore City must be affirmed.

> *Decree affirmed, and appellants to pay the costs.*