GEORGE F. OBRECHT ET AL., TRUSTEES, *vs.* ALBERT H. FRIESE ET AL.

*Absolute Deed as Mortgage—Bill by Grantor—Sufficiency— Equity of Redemption—Transfer to Mortgagee.*

The mere fact that the grantor in an absolute deed, by an agreement executed at the time of the deed, is to receive the excess of purchase money over a certain price, in the event of a sale by the grantee within a fixed time, does not necessarily constitute the transaction a mortgage.      pp. 489, 490

There may be a sale of the equity of redemption to a mortgagee, where the transaction is fair, untainted with any advantage taken by the mortgagee, in the use of his incumbrance, or the necessities of the mortgagor, to influence him to dispose of his estate for less than the real value.      p. 490

Where the grantor in an absolute deed, by the terms of which the grantor was to receive, in case of sale by the grantee within a named time, any proceeds in excess of certain claims named, filed a bill seeking to have the deed declared a mortgage, *held* that allegations therein that the value of the property was much greater than the claims and the costs of a sale, and that the deed was intended merely as security, were sufficient to require an answer.      pp. 491, 492

In such a bill, an allegation that defendants were making no effort to effect a sale was material, it being of the utmost importance to plaintiffs that such effort be made.        p. 492

In a suit to have an absolute deed declared a mortgage, and to have the property sold, in order that plaintiffs might have the benefit of a provision giving them any proceeds of sale in excess of sums owing defendants, *held* that it was not a condition of any relief to plaintiffs that they be in a position to redeem the property themselves or to present a purchaser ready, willing, and able to buy at a price sufficient to cover all amounts due the trustees.        p. 492

*Decided June 11th, 1925.*

Appeal from the Circuit Court for Baltimore County, In Equity (PRESTON, J.).

Bill by Albert H. Friese and Nellie P. Friese, his wife, against George F. Obrecht and Annie Friese, trustees. From a decree for plaintiffs, defendants appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*J. Paul Schmidt,* for the appellants.

*William F. Podlich* and *Warren N. Arnold,* submitting on brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint in this case alleged that the plaintiffs, Albert H. Friese and Nellie P. Friese, his wife, on October 15th, 1924, were owners of two separate parcels of real estate, one on the north side of Edmondson Avenue, in Baltimore County, and the other on the north side of Frederick Turnpike Road, in said county; that prior to said date they had executed several mortgages of said property to the Catonsville Loan and Savings Association, the amount remaining due on which was approximately $11,000; and had

also executed a junior mortgage thereof to the defendants,
George F. Obrecht and Annie Friese, trustees under the last
will and testament of Albert Friese, deceased, to secure the
loan of $4,500, and in addition were indebted to said defend-
ants in the sum of $4,000, which was unsecured; that on
said date, plaintiffs, being in fear of the institution of fore-
closure proceedings by the Catonsville Loan and Savings As-
sociation, and being pressed by the defendants for payment
of the unsecured debt above mentioned, entered into a writ-
ten contract with said defendants in the following terms:

"This agreement made this 15th day of October,
1924, by and between George F. Obrecht and Annie
Friese, trustees under the last will and testament
of Albert Friese, deceased, parties of the first part,
and Albert H. Friese and Nellie P. Friese, his wife,
of Baltimore County, State of Maryland, of the sec-
ond part.

"Whereas the said Albert H. Friese and Nellie P.
Friese, his wife, are indebted to the said George F.
Obrecht and Annie Friese, as trustees under the last
will and testament of Albert Friese, deceased, in the
sum of ninety-five hundred dollars, forty-five hundred
dollars of which is secured by a mortgage on prop-
erty belonging to the said Albert H. Friese and Nel-
lie P. Friese, his wife, located in and near the vil-
lage of Catonsville, and more particularly described
in a deed of even date herewith from the said Albert
H. Friese and Nellie P. Friese, his wife, to the said
George F. Obrecht and Annie Friese, trustees as afore-
said, and four thousand dollars of which is an unse-
cured loan.

"And whereas the said Albert H. Friese and Nellie
P. Friese, his wife, are unable to pay said indebted-
ness which is now due and payable, and are also
unable to pay the first mortgage on the said property,
which is a prior lien to the mortgage held by the said
trustees, and said first mortgage is now in default.

"Now, therefore, in consideration of the premises
and the mutual agreements as hereinafter set forth

and other considerations passing from each of the parties hereto to the other, it is agreed:

"That the said Albert H. Friese and Nellie P. Friese shall convey said property to the said trustees by an absolute deed which is evidenced by their signatures to said deed of even date herewith.

"That the consideration for said conveyance shall be the payment by the trustees of the first mortgage on said property, amounting to approximately eleven thousand dollars, the liquidation and cancellation of the forty-five hundred dollars mortgage to the trustees, and the liquidation and cancellation of the unsecured loan, amounting to four thousand dollars.

"That if the said property shall be sold within one year from the date hereof, the said Albert H. Friese and Nellie P. Friese shall receive any balance remaining after the payment of the above amounts, together with all interests, costs and expenses attached to this transaction, including attorney's fees and broker's charges for selling the bonds belonging to the said trustees, in order to raise the funds to liquidate the said first mortgage.

"After the expiration of one year from the date hereof, the total amount of any sale of said property shall belong to the said trustees and the said Albert H. Friese and Nellie P. Friese shall have no interest therein whatsoever.

"That the said Albert H. Friese and Nellie P. Friese shall be liable for any other liens or charges against said property other than those mentioned above, and the same shall be paid out of any balance remaining and payable to the said Albert H. Friese and Nellie P. Friese, if the sale is made during the first year, or if no sale is made during the first year, then said liens shall be the obligation of the said Albert H. Friese and Nellie P. Friese and chargeable against any funds in the hands of said trustees belonging to the said Albert H. Friese.

"That the said Albert H. Friese and Nellie P. Friese shall occupy the property located on Edmondson Ave-

nue for a period of six months, without any obliga-
tion for the payment of rent therefor.

"That the said trustees shall not rent or lease said
property except upon a monthly basis until the expira-
tion of one year from date hereof.

"That the said trustees shall take full possession and
own and occupy the property on Frederick Avenue
and collect the rents and profits issuing therefrom
and assume the expenses thereon as of the date of the
signing of this agreement, and shall take full posses-
sion and own and occupy the said property on Ed-
mondson Avenue and collect the rents and profits issu-
ing therefrom and assume the expenses thereon as of
the date of the said Albert H. Friese and Nellie P.
Friese shall vacate the same or at the end of six months
from the date hereof, whichever shall first occur."

That in pursuance of said agreement, plaintiffs on said
date executed and delivered to the defendants a deed in fee
simple of said properties, absolute on its face, but which was
intended by all the parties to be merely a security for the
considerations mentioned therein; that in fact the said deed
is a mortgage for the purpose of securing the defendants for
the money advanced by them, and for the undertaking on
their part to be performed; that although six weeks have
elapsed since the execution of said deed and agreement, the
said defendants have not complied with the terms and pro-
visions thereof, in that said defendants have failed to pay
and liquidate the mortgage held by the Catonsville Savings
and Loan Association, and have also failed to release of rec-
ord the mortgage held by defendants; that although the de-
fendants represented to the plaintiffs that they would make
every effort to sell said property as soon as possible, in order
to satisfy the claims of said defendants and to protect plain-
tiffs' interests, they have made no progress towards such a
sale; that the tenant to whom they rented the property on
the Frederick Turnpike Road objects to a "For Sale" sign
on the property and has actually removed such a sign placed
there by plaintiffs, and that no effort is now being made to

effect such a sale; that plaintiffs have a substantial equity in said property, amounting to more than five thousand dollars after paying all claims and expenses; that said agreement of October 15th, 1924, is unconscionable, calculated to unlawfully defeat the interest of plaintiffs in said property, and totally unenforceable in equity, and that the execution of said agreement and the delivery of said deed can only, in equity and good conscience, be construed to be a mortgage; that the plaintiffs are unable to pay in cash the money that may be due defendants; that an immediate sale of the property is necessary for their protection, and that such a sale would bring sufficient funds out of which the claims of defendants can be fully satisfied; that although plaintiffs have repeatedly requested defendants to account for their receipts and disbursements under said agreement, they have failed and neglected to render such an accounting.

The prayer of the bill is: (a) That the deed may be declared to be a mortgage. (b) That defendants may be directed to account to plaintiffs for receipts and expenditures under said agreement. (c) That a trustee or trustees may be appointed to sell said property at public or private sale. (d) For further relief.

Appellant relies largely upon the recent decision in *Bailey v. Poe,* 142 Md. 57. But that case was decided on the evidence and not on demurrer.

Referring to the transaction involved in that case, we said that so far as the form goes it could be either a sale or a loan, and that the determination of the question was a matter of intention; that the question in all such cases is what is the real substance of the transaction and not what color or form it has assumed; that where, on all the facts and circumstances, it is apparent that the transfer of the property is intended as security for a loan, courts will go behind the form, however skillful the disguise may be, and hold the transaction to be what it really is; that on the other hand, the mere fact that the grantor, by an agreement executed at the time of the absolute conveyance, is to receive the excess

of purchase money over a certain price in the event of a sale by the vendee within a fixed time, does not necessarily constitute the transaction a mortgage.

In that case the transaction did not grow out of a situation where the parties had previously occupied the relation of mortgagor and mortgagee; and we found that, according to the decided weight of the evidence, it had been made plain in the negotiations that the defendants were buying the property and not making a loan upon it.

As far back as *Sheckel v. Hopkins,* 2 Md. Ch. 90, it was said: "There can be no doubt that whenever the relation of mortgagor and mortgagee is shown to exist, the court views with distrust and disfavor, any agreement between them by which it is proposed to transfer the equity of redemption to the mortgagee, and the parties will be held to their original relation of mortgagor and mortgagee, unless the transaction shall, upon a close examination into its circumstances, appear to be perfectly fair, and no advantage taken by the latter of the former," but "there may be a sale of the equity of redemption to a mortgagee, where the transaction is fair, untainted with any advantage taken by the mortgagee in the use of his incumbrance, or the necessities of the mortgagee to influence him to dispose of his estate for less than the real value."

This expression has been quoted with approval in many cases since decided by this Court.

In *Rosenstock v. Keyser,* 104 Md. 383, and again in *Funk v. Harshman,* 110 Md. 129, and in *Bailey v. Poe, supra,* we approved the rule stated in *Pomeroy's Equity Jurisprudence,* vol. 3, sec. 1196: "Any conveyance of land absolute on its face without anything in its terms to indicate that it is otherwise than an absolute conveyance, or without any accompanying written defeasance, contract of repurchase, or other agreement, may in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage as between the original parties, and as against all those deriving title from or under the grantee, who are not bona fide purchasers

for value and without notice. * * * The general doctrine is fully established, and certainly prevails in a great majority of the states, that the grantor and his representatives are always allowed in equity to show, by parol evidence, that a deed absolute on its face was only intended to be a security for the payment of the debt, and thus to be a mortgage, although the parties deliberately and knowingly executed the instrument in its existing form, and without any allegations of fraud, mistake, or accident in its mode of execution. * * * The one test and essential requisite is the continued existence of a debt. If there be no indebtedness, the conveyance cannot be a mortgage; if there is a debt existing and the conveyance was intended to secure its payment, equity will regard and treat the absolute deed as a mortgage. The presumption of course arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; to overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail."

And we were careful to say in *Bailey v. Poe, supra,* that the principle that "if there be no indebtedness the conveyance cannot be a mortgage" does not mean that a stipulation to repay the principal in *money* is necessary. "It is enough if the principal is secured and not *bona fide* put in hazard, and it matters not what the nature of the security is, if it is sufficient. * * * The true ground is, not that there must be a stipulation to repay the principal at all events in money, but that it must in some way be secured, as distinguished from being put in hazard; but whether it is secured by pawn or pledge or a conveyance of land, or is by agreement to be returned in lands, goods or money, is not material." *Tyson v. Rickard,* 3 H. & J. at p. 114.

So that it becomes important to inquire what is the value of the property conveyed by the alleged deed. The bill alleges that it is much greater than the claims against it and the costs of a sale. That question can only be determined by

proof. This allegation alone, together with the allegation that the deed was intended by all the parties merely as a security for money advanced, would be sufficient to require an answer.

But the contention of appellants is that the agreement incorporated in the bill obviates the necessity for an answer, because it states just what the consideration for the deed is; also that the property shall be conveyed by an absolute deed; and that the trustees shall take full possession and own and occupy the property. But all this is little more than is said in an ordinary deed in fee simple.

In *Montague v. Sewell,* 57 Md. 414, it is said: "The original intention of the parties can seldom be arrived at except by resort to matters *dehors* the particular instruments executed by them."

Whether the transaction in this case be a mortgage or a conditional sale, it is perfectly apparent that the plaintiffs could have had but one purpose in it, that is to gain time and avoid immediate foreclosure proceedings. They had nothing to gain by executing the deed except a chance of an advantageous private sale, unless it be true that the value of the property was not greater than the debts which defendants agreed to cancel and discharge. It was of the utmost importance to them that active efforts be made to effect a sale, especially as the time limit by the agreement was one year. Therefore the allegation in the bill that "no effort is now being made by the defendants to effect such sale" is material. Nor can we agree with the contention of appellants that, as a condition to any relief, plaintiffs must be in a position either to redeem the property themselves or to present a purchaser ready, willing, and able to buy at a price sufficient to cover all amounts due the trustees.

If that were the law, one who had no means other than the mortgaged property, and was without experience in selling real estate, could be robbed by any rapacious creditor shrewed enough to get absolute title to such property under promises held out to a necessitous debtor.

However, there is much to be said for the position of defendants in this case, if it be true that there is no margin in this property over their claim against it.   In that case it would be a hardship to subject them to the expense of a sale, to avoid which was one of the expressed purposes of the conveyance to them.   But such a result need not necessarily follow the overruling of the demurrer.

We think the learned chancellor ruled correctly.   There is enough in the bill to require an answer.   After the taking of testimony, the chancellor will be in a position to protect the rights of all parties.

All that we decide is that the documentary evidence now appearing in the case is not sufficient to exclude other testimony.

> *Decree affirmed and cause remanded for further proceedings, with costs to appellants.*