CHARLES E. SCARLETT *v.* KENDALL A. YOUNG.

[No. 12, April Term, 1936.]

*Decided May 18th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*J. Wallace Bryan,* for the appellant.

*Edwin T. Dickerson,* with whom was *Max Sokol* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The defendant is the president and principal owner of two corporations of which the plaintiff was the treasurer until 1926. In his capacity as treasurer he prepared the income tax returns of both corporations, whose employment he left during the year 1926. The plaintiff is a lawyer and, in the spring of 1927, he became a certified public accountant, and has since been occupied in the practice of accountancy. It is not denied that in September, 1927, the plaintiff was engaged by the two corporations to make their federal yearly income tax returns and state tax report for an annual fee of $250, and that he satisfactorily performed this service and was paid the agreed compensation. The contract was evidenced by a letter in the possession of the defendant. On the margin of this letter, which was written in confirmation of a previous agreement and which contained an itemized statement of the services to be rendered by the accountant, were these words, one over the other, in lead pencil writing: "Also Personal Returns." The defendant asserts that these words were added with the plaintiff's assent for the purpose of establishing that the contract was to include, for the same reward, the plaintiff's services in connection with the defendant's personal income tax returns. The plaintiff denied that he had so agreed, and that he had seen or known of the penciled words, and maintained that the personal income tax returns of the defendant were to be made by him pursuant to a later oral contract entered into during December, 1931. These differences resulted in an action by the plaintiff, and the recovery of a judgment on November 15th, 1935, against the defendant for $533.40. The appeal at bar is by the defendant, and is from this judgment, in an action on the common counts in assumpsit brought by the plaintiff against the defendant to recover for services rendered.

The action was brought in Baltimore City under the

Speedy Judgment Act (chapter 184 of Acts of 1886). With the declaration was filed a statement of account for advice and services as an income tax consultant in connection with defendant's income tax return for the years 1931, 1932, and 1933, under an oral agreement by which the plaintiff was to be compensated for this advice and services given by the plaintiff to the defendant by the payment of ten per centum on the amount of savings in taxes which would be effected in connection with these tax returns. The account represented these savings to the defendant to have been the aggregate amount of $5,014, for which the plaintiff claimed $501.40. The defendant pleaded the general issue, and the case was tried before a jury. Five exceptions were reserved to rulings on the evidence. The plaintiff offered no prayer, and the granted prayers of the defendant were those which instructed the jury. The defendant's first prayer and his second prayer, as modified by the court, were granted, and his A, B, C, D, third, fourth, fifth, sixth, and seventh prayers were rejected, and to the court's adverse action on these prayers the sixth exception was taken.

The defendant's A prayer was a demurrer to the legal sufficiency of the testimony, and his B prayer asked for a directed verdict on the theory that the agreement which the testimony on the part of the plaintiff tended to prove was not binding because it was not sufficiently definite to enable the court to know its exact meaning. The court is of the opinion that both prayers were rightly refused. The testimony on the part of the plaintiff, if believed, was legally sufficient to prove an agreement on the part of plaintiff to render certain services to the defendant for reward; a performance of these services by the plaintiff; and a refusal of the defendant to pay the promised reward. The contention that the contract was too indefinite to be enforced is without foundation. There is no element of fatal uncertainty in the commonplace undertaking of an accountant to advise a person with respect to how income taxes might be reduced, and to prepare and state his federal income tax returns. Nor is the agree-

ment avoided for indefiniteness because of the term that the measure of the accountant's reward for performance would be a fixed percentage of the amount saved to the taxpayer as a result of the services of the accountant. The promise is made certain by reference to the taxpayer's return under the federal law. The return affords the data from which the saving, if any, and its amount, will appear in the form contemplated by the contracting parties. Even if the promise should be within its terms uncertain, it is not too indefinite, if made certain, as here, by being made referable to some document or other transaction. *Williston on Contracts* (2nd Ed.) sec. 47; *Alexander v. Capital Paint Co.*, 136 Md. 658,. 668-674, 111 A. 140; *Parks v. Griffith & Boyd Co.*, 123 Md. 233, 242, 243, 91 A. 581; *Tidewater Oil Co. v. Spoerer*, 145 Md. 151, 159, 125 A. 601. Furthermore, the portion of the agreement that it is argued was originally too indefinite has become definite by entire performance by the plaintiff. *Williston on Contracts* (2nd Ed.) sec. 49.

During the course of the testimony of the plaintiff, he produced a particular account of the savings effected in income taxes by the sale of securities which had been sold at various times during the period of three years upon the information furnished and advice given to the defendant by the plaintiff, according to the latter's testimony. The account completely itemized and clearly showed in what manner the course adopted and pursued had resulted in a savings in taxes of $2,297.36 for the year 1931, of $905.32 for the year 1932, and of $2,131.37 for the year 1933, which made the total savings $5,334.05, on which the fee of ten per centum was to be based.

After the introduction in evidence of this statement, the defendant admitted that the sales specified had been made and that by virtue of these sales the income of the defendant for income tax purposes had been decreased to the amount of $5,334.05. The admission is a demonstration that neither by its terms nor from extrinsic circumstances is the agreement asserted on the part of the plaintiff incapable of enforcement because of vagueness.

Nor, because of the circumstances stated, was the defendant entitled to have its fifth prayer granted, since by it the defendant sought to have the jury instructed that there was no testimony from which the jury could find the amount the defendant had been able to save in his income taxes by reason of losses sustained on the sales of his securities.

The defendant's C, D, third and fourth prayers were properly refused. These prayers presented in varying form the hypothesis that if, at the time of their contract, the parties knew that the defendant could effect a reduction in the amount of his income tax by a sale of securities at a loss, and the deduction of the loss from his income, the savings thus effected were neither within the contemplation of the contract as stated by the plaintiff, nor were they causatively procured by the plaintiff. The knowledge of the parties, when they agreed that losses sustained on the sale of securities were lawful allowances in reduction of income, neither defines nor affects the explicit terms of the contract here asserted on the plaintiff's evidence. On the plaintiff's theory of the facts, the defendant, notwithstanding his own information, desired and obtained the services and judgment of an accountant in a matter in which expert advice and knowledge were advantageous. Information of the fact that allowances are made for losses on sales of securities is quite different from the knowledge or judgment of when and what to sell. Furthermore, the plaintiff, a qualified accountant, in the performance of his employment, acquired the information upon which to base his advice and to obtain the deductions by his study of the statute, by conference with the internal revenue officers of the federal government, by analysis of the periodic financial statements of the corporations that had issued the securities sold or the bonds on which losses were claimed, and by an evaluation of the comparative present and prospective worth of the various securities owned by the defendant. The prayers under immediate consideration ignore this material testimony on the rec-

ord, and misconstrue the agreement which the plaintiff has supported by testimony. The defendant desired and obtained the services and judgment of the plaintiff in a particular matter, and agreed to pay a reward upon the plaintiff's performance. After accepting entire performance by the plaintiff, the defendant cannot defeat the plaintiff's compensation for performance by showing that the defendant had equal or superior qualifications for the services engaged or the judgment obtained.

The remaining rejected prayers are the sixth and seventh. These two prayers submit for the finding of the jury certain customs of certified public accountants in regard to the scope of services rendered in preparing and checking income tax returns for a fixed fee, of which there is no testimony; nor is there testimony that any of the undertakings of the plaintiff were with reference to such customs. In addition, the two prayers are misleading and confusing in confounding the preparation and checking of income tax returns with counsel and advice given during the fiscal year in respect of the advantageous sale of depreciated securities and the fixing of loss in bonds of insolvent corporations for the purpose of establishing an allowance of the losses in reduction of income. These vices were sufficient for the refusal to grant these prayers.

The defendant's first prayer and his second prayer as modified were granted, and they fairly and fully presented to the jury the defendant's theory of the case. The questions of evidence are comparatively unimportant. They are five in number. The first is on a motion to strike out testimony. Towards the close of the plaintiff's testimony, he stated on cross-examination that while the income tax returns made by the defendant for the years 1931 and 1932, two of the years involved, had been finally audited by the government, the return for 1933 had not been when the action was brought on June 25th, 1934. He explained, however, that in making his calculation for the savings effected by him for 1933, he had excluded every debatable item upon which any disallowance might

be made by the government's final audit, and, accordingly, had included only the savings effected by actual sales of securities, so that any change that might result would inure to the advantage of the defendant. It was at this stage of the cross-examination that the motion was interposed. The motion was not addressed to a particular answer on the ground that it was unresponsive, or was otherwise objectionable because of its nature or form. To the contrary, the motion was to strike out "any evidence as to 1933' which had been introduced, and the ground assigned was that the amount of the savings for 1933 would not be finally determined until the government officials had audited the return; and that, therefore, the plaintiff could not recover his percentage for the year 1933. There were several reasons for the rejection of this motion. The testimony at which the motion was directed had been given without objection by the defendant, and, not working a surprise, should have been objected to when the questions were asked that brought forth the testimony. *Klecka v. State,* 149 Md. 128, 132, 131 A. 29; *Wigmore on Evidence* (2nd Ed.) sec. 18. Again, a motion is too general and indefinite to be entertained when it proposes to eliminate from all the testimony taken a mass of evidence as to a named year, without any other designation or identification of the testimony which is sought to be excluded. Passing from these objections on procedural grounds, the motion was, in effect, a request for a ruling that on the testimony the plaintiff had no right of recovery of a fee for the year 1933. It would have been good practice to have presented this question by offering an appropriate instruction to the jury at the close of the case. In no matter what form the objection might have been raised, there was legally sufficient evidence offered by the plaintiff tending to prove that his fee for 1933 was due and owing at the time of suit.

His testimony, if found true, was that he had fully performed his promises, and that he had brought about a reduction in the income tax of the defendant for the year

1933. The defendant had formally admitted that the savings claimed had resulted from the method described by the plaintiff, and that the plaintiff's calculations were correct. The ascertainment of the amount of the savings was not made conditional on the final audit of the government. At the time the defendant paid his income tax for the year 1933, the deductions had been created, and he had realized the full benefit of the savings thus assured in his correspondingly reduced payment. The plaintiff's testimony further tended to establish that the final audit of the government would not affect adversely these savings because, in his computation of the amount saved, the plaintiff had cast out every debatable item, and included only the unimpeachable items of the sales made of securities and the losses thereby sustained. Under these circumstances, the defendant had received the full benefit of an entire performance of the plaintiff's promises at the institution of the action at bar, if the jury believes the plaintiff's version of the contract, and the fees for 1933 are recoverable.

The other four exceptions are to the rulings which properly excluded testimony of public accountants which was offered for the purpose of modifying the explicit terms of the contract—whether the version of the plaintiff or defendant be accepted—by the introduction of proof of the custom and usage of accountants. "Usage may be admissible to explain what is doubtful, but never to contradict what is plain." *Travelers' Insurance Co. v. Hermann,* 154 Md. 171, 186, 140 A. 64, 70.

Since no reversible error is found, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*