FOARD ET AL. *v.* SNIDER ET UX.

[No. 9, October Term, 1954.]

436

438

*Decided November 15, 1954.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Louis S. Ashman*, with whom were *Ashman, Link &
Merryman* on the brief, for the appellants.

*J. Albert Roney, Jr.*, and *William G. Kemp*, with whom
was *Edward D. E. Rollins* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

Two of the appellants, E. Carey Foard and Lily W.
Foard, his wife, owned a farm in Cecil County known as
Oakwood, encumbered by a first mortgage of some

$5,000.00 held by the estate of Edward Jackson, as well as a second mortgage held by Cecil W. Snider and Esther B. Snider, his wife, the appellees, in the amount of some $4,500.00. The second mortgage was further secured by the livestock and farm machinery on Oakwood, and was a first lien on a dwelling owned by the Foards at Colora in Cecil County; and on an insurance policy on the life of E. Carey Foard, which had a cash value of approximately $1,000.00.

The Foards operated Oakwood as a dairy farm. Mr. Foard was employed and so could work on the place but little. The real work was done by Albert P. Foard, the son of the Carey Foards, the third appellant. In the spring of 1950, the testimony shows, it was apparent that the Foards would have to refinance. They were in arrears as to both principal and interest on the first mortgage and were being pressed for payments. They were in arrears on the monthly payments due the appellees under the second mortgage. The dairy company to which they shipped their milk had taken them off the premium market, with a consequent reduction in income, because of the deterioration of the herd or the barn or both. The buildings on the farm were in need of very extensive repairs.

The necessity for action brought about a transaction on April 20, 1950 which was the source of the litigation between the appellants and the appellees, and which has culminated in this appeal. On that day, the parties met in the office of the attorney for the appellees and executed the following papers: the elder Foards executed a deed and a bill of sale to the Sniders, by which there were conveyed, respectively, Oakwood, and its livestock, machinery and equipment. The Jackson mortgage was released, as was the mortgage from the Foards to the Sniders, so that the Colora property and the insurance policy became free of liens. The Sniders executed a new $5,000 mortgage on Oakwood to the Jackson estate. There was signed by the Sniders, as an integral part of the transaction, an option agreement running to

Albert Foard, which purported to give him the right to buy back Oakwood and the personal property on it, within six months, upon full reimbursement to the Sniders. On the same evening, after all of the papers were signed, Mr. Snider employed Albert Foard to work the farm at a salary of $80.00 a month with the understanding that he and his parents could live on the place during the time of his employment. A month or so later, Snider dismissed Albert Foard and demanded possession of his farm. Foard refused to deliver possession and on June 5, 1950, the Circuit Court for Cecil County, upon the filing of a bill by the Sniders, enjoined him from denying possession. The court dissolved the preliminary injunction and dismissed the bill of complaint after hearing testimony on October 18, 1950. The next day, one day before the expiration of the six months' term of the option, the appellants delivered a letter to the appellees which demanded that they surrender possession of the farm, and expressed an intention: "* * * to redeem the said farm and personal property and to pay you in full all amounts legally due you upon your delivery * * * of a merchantable fee simple deed and a bill of sale, free of liens, to the said farm and personal property; * * *." The appellees ignored the demand and the offer to redeem, and about a month later, the appellants filed suit at law in the Circuit Court for Cecil County against the appellees for conspiracy, assault, trespass Q. C. F., trespass D. B. A. and trover, to which the appellees pleaded the general issue. This case has not yet come to trial. In the letter of October 19, 1950, the appellants qualified the offer to pay what was due by saying that the deed and bill of sale amounted to a mortgage and that they were entitled to redeem without the payment of some $6,000, which had been expended for improvements by the appellees after the farm had been deeded to them.

Some two years after the date of the letter, after almost continuous bickering between the parties—the Sniders cut off the electricity and water in the cottage

in which the appellants continued to live, and in the face of strenuous objections, restored it, again cut it off, and then again restored it, on agreement of the appellants to file a bill for declaratory relief—the appellants, on September 9, 1952, filed a bill for a declaration as to the respective rights of the parties.

The Sniders answered, and about fourteen months later, on November 10, 1953, the court, on their petition, passed an order requiring the three Foards to show cause why the case should not be submitted for decree. The Foards filed an answer and a cross petition for a mandatory injunction to compel reinstatement of the water and electricity in their cottage. On December 17, 1953, the court, without hearing, filed its opinion and decree, holding that the deed and bill of sale of April 20, 1950 were absolute and unconditional conveyances of title and not conveyances by way of mortgage or to secure a debt, and that the option agreement of the same date was void and of no effect because of uncertainty. The appeal before us is from that decree.

We find that the decree appealed from was correct in holding the deed and bill of sale to be absolute conveyances and not mortgages, but that there was error in declaring the option void for uncertainty. In so doing, we are not to be understood as approving the deciding of a case without notice or hearing. *Rakar v. Clapper,* 203 Md. 265.

The rules which control the determination of whether a deed of an equity of redemption is a sale or a mortgage, are plain and have been reiterated many times by this Court. The presumption is that the instrument is what on its face it purports to be, an absolute conveyance of the land. To overcome this presumption and to establish its character as a mortgage, the evidence must be clear, unequivocal and convincing. *Obrecht v. Friese,* 148 Md. 484, 491; *Bailey v. Poe,* 142 Md. 57; *Funk v. Harshman,* 110 Md. 127; *Rosenstock v. Keyser,* 104 Md. 380. Nevertheless, equity will look beneath the external form of an instrument and if the real transaction, the

actual intention of the parties, is shown to be that the papers were executed as security, will allow the debtor to redeem the property upon payment of the debt. If the grantor continues to be bound to pay the debt, equity will treat the conveyance as a mortgage, regardless of the form of the conveyance. If the conveyance extinguished the debt, the transaction will be considered as a sale. *Coster v. Arrow B. & L. Ass'n,* 184 Md. 342.

Testimony of disinterested witnesses established that the improvements on Oakwood had deteriorated to a serious extent. The holder of the first mortgage testified that he "hardly felt that it was worth the price of the mortgage". The Foards were unable to refinance the existing mortgages and were faced with the imminent possibility of foreclosure. If Oakwood should not bring enough under foreclosure, Colora might be lost. The Chancellor, referring to the testimony that the real estate was hardly worth the amount of the first mortgage, said: "This witness was disinterested in the present controversy and one in whom I have confidence as to his judgment and integrity." He then considered that Snider valued the farm at $9,000 and Carey Foard at $13,000 to $14,000, and went on to say: "There is evidence of deterioration and neglect * * *. I believe from this evidence the value of the farm and chattels was between $10,000 and $11,000, but not at a forced sale. At auction this used machinery, rundown cattle and neglected farm might well have sold for less than the debt due on the mortgages." We think that the finding of the Chancellor was justified and that the appellants have not shown that they had any real equity in the property and chattels at the time of the conveyances. Persuasive evidence that the transaction was a sale and not a mortgage is the release from lien of the Colora property, admittedly worth some $5,000, and the life insurance policy with the cash value of $1,000, in consideration of the transfer of the property. It is scarcely conceivable that the Sniders would have done this if they were to continue to be mortgagees. The Foards are intelligent, are literate and

not unfamiliar with deeds and mortgages; in fact, they testified that they knew the difference between the two, and that they had read the papers before they signed them. They knew that the first mortgage held by the Jackson estate was being released and that the Sniders were executing a new mortgage to the same mortgagee. This was, of course, inconsistent with the claim that the relationship between the Foards and the Sniders was still that of mortgagors and mortgagees. The option agreement refers to the "deed of even date" and speaks of the right to repurchase. Further, the Foards directed the milk company to make the checks payable to Snider. Snider had refused to refinance the two mortgages. It is clear, we think, that the conveyances were outright transfers of title and were not intended as security. The debt was extinguished.

It was contended by the appellees below, as it is here, that the option agreement is unenforceable because it is so indefinite that it is impossible to gather from it the intention of the parties. The Chancellor agreed, relying on cases such as *Thomson v. Gortner,* 73 Md. 474, and *Smart v. Graham, City Comptroller,* 179 Md. 476. We take the view that a reasonable degree of certainty, as to what was intended, is readily to be gleaned from the terms of the option. *Hoffman v. Chapman,* 182 Md. 208, 211. The option agreement gives unto Albert Foard the right to purchase the farm and the personal property: "* * * within six months of this date, at and for a fair and reasonable evaluation of said property as determined by the said parties of the first part based on the consideration paid for said property this date, plus any and all improvements thereto made by said parties of the first part and all sums expended by the said parties of the first part for the improvement of the stock, farming equipment, etc." It is plain that the formula by which the price was to be determined actually left nothing to the discretion of the Sniders. Any implication of this in the literal language is countered by the inexorable exactness of the three amounts which add up to the total

price: 1, the consideration paid; 2, the cost of all improvements made by the Sniders; plus 3, all sums expended by them for improvement of stock or farming equipment. Each of these elements may be made fully certain and the computation of the price is a matter of mere mathematics. This being so, any seeming uncertainty inherent in the language of the option is cured by reference to readily ascertainable facts. The books of account and checks of the Sniders and the Foards would show the consideration paid, the cancelled checks of the Sniders and receipted bills would show the cost of improvements to buildings, stock or equipment, stated to be some $6,000. In *Scarlett v. Young*, 170 Md. 358, it was said that even if the promise should be, within its terms, uncertain, it is not too indefinite if made certain, as here, by being made referrable to some document or some other transaction. In *Trotter v. Lewis*, 185 Md. 528, which, among other things, dealt with indefiniteness as to the terms of an option, Judge Delaplaine said for the Court, in quoting *Restatement of Contracts*, Sec. 370, the following: " 'The usual aids to interpretation will be availed of by the Court, just as in the case of enforcement by other remedies. Expressions that at first appear incomplete or uncertain are often readily made clear and plain by the aid of common usage and reasonable implications of fact. Apparent difficulties of enforcement due to uncertainty of expression may disappear in the light of courageous common sense.' " See also *Williston on Contracts*, Rev. Ed., Sec. 41 and 47, and *Corbin on Contracts*, Vol. 5, Sec. 1174, and Vol. 1, Sec. 98, where the author says: "An agreement is not unenforceable for lack of definiteness of price or amount if the parties specify a practicable method by which the amount can be determined by the court without any new expression by the parties themselves." In *Tallman v. Smith* (Colo.), 148 P. 2d 581, there was purchased a fractional interest in a hardware store and the buyer was given an option to buy additional fractions when the first had been paid for, at a price to be determined

at that time by the inventory then on hand. It was held that this was sufficiently definite. See also *Didriksen v. Havens* (Conn.), 68 A. 2d 163, where the option was to purchase the premises for a stated sum subject to an existing mortgage of $5,000. There was a claim that this rendered the price uncertain. The Court held that the agreement meant that the optionee should pay the agreed price, less any amount currently due on the mortgage, and said that: "* * * there was no such uncertainty as would violate the statute; the amount due on the mortgage would be fixed and definitely ascertainable * * *". See also *Gutch v. Meccia* (N. J.), 60 A. 2d 649; *Shayeb v. Holland* (Mass.), 73 N. E. 2d 731; *Volk v. Atlantic Acceptance & Rlty. Co.* (N. J.), 50 A. 2d 488. There is an annotation on the subject in 117 A. L. R. 1095, and of significance also is an article by Roscoe Pound in 33 *Harvard Law Review*, 433. Maryland cases which support the view we have taken include *Hagan v. Dundore*, 185 Md. 86; *Robinson v. Gardiner*, 196 Md. 213; *Trotter v. Lewis, supra.*

A question more difficult to answer, had the appellees relied on the point, would be whether Albert Foard did exercise the option within the six months' period specified in it. Time is of the essence in a unilateral contract, such as an option, both in law and in equity, whether expressly declared to be so or not. *Williston on Contracts*, Rev. Ed., Sec. 853; *Pomeroy, Equity Jurisprudence*, 5th Ed., Vol. 4, Sec. 1408; *Maughlin v. Perry*, 35 Md. 352. Each such agreement must be scrutinized to see what it requires to be done within the specified time, either expressly or by necessary implication. Does it require completed performance, that is, actual payment, or does it require tender of the agreed price? Generally, there is contemplated only a notice of acceptance of, and a readiness and willingness to perform, the irrevocable offer which is an option. Whatever the option requires must be done. As in the case of all offers, revocable or irrevocable, the exercise must be unconditional and in exact accord with the terms of the option. For holdings

that there must be a tender within the stated time, see *Williston*, work cited, Sec. 853, p. 2390; *Pomeroy*, work cited, Sec. 1407a (3), p. 1052; *Coleman v. Applegarth*, 68 Md. 21, 28. On the other hand, it has been held that: "* * * the option is a continuing offer to sell and, when duly accepted by the optionee, becomes a definite contract mutually binding and enforceable. * * * When an optionee duly signifies his purpose to accept an option for the purchase of real estate, and tenders the amount of the purchase price *if required*, he is entitled to specific performance of the contract. The objection that the original agreement was lacking in mutuality is without merit, for when the optionee exercises an option the agreement becomes binding upon both parties." (Emphasis supplied). *Trotter v. Lewis, supra,* at p. 534 of 185 Md. The statement is repeated in *Blondell v. Turover*, 195 Md. 251, 256. See *Corbin on Contracts,* Vol. 1, Sec. 264, where it is said: "In most cases the contemplated mode of acceptance by an option holder is the giving of a notice resulting in a bilateral contract." If there is required only notice of acceptance of the irrevocable offer, there is, in effect, upon acceptance, the equivalent of an ordinary contract of sale, and a reasonable time will be given for performance. *Trotter v. Lewis, supra,* at pages 534-535 of 185 Md.; *Corbin,* work cited, Vol. 1, Sec. 273. See also *Butler v. Richardson* (R. I.), 60 A. 2d 718; *Martindell v. Fiduciary Counsel* (N. J.), 30 A. 2d 281; *Thomason v. Bescher* (N. C.), 97 S. E. 654; *Durepo v. May* (R. I.), 54 A. 2d 15; *Unatin 7-Up Co. v. Solomon* (Pa.), 39 A. 2d 835.

We do not decide whether a tender was essential or notice of acceptance would suffice in the instant case, or whether the letter of October 19, 1950 would meet the test as an acceptance, because, as we see it, the appellees waived any defense they might have that the exercise of the option was not seasonably made or made in proper form. They chose to rely consistently, as they have done here, on their contention that the terms of the option agreement were too indefinite to be binding.

The letter of October 19, 1950 from the Foards to the Sniders was headed by a syllabus of two parts. Part A was a demand for possession of the farm. Part B was as follows: "* * * E. Carey Foard and Lily W. Foard and Albert P. Foard will pay balance legally due Cecil W. Snider and Wife at delivery to them of a good fee simple and merchantable deed and bill of sale to farm, etc." In the letter, the same statement was made, although there was added that, as the testimony in the injunction case had shown, the Foards claimed they never understood and never agreed to pay for the improvements made on the farm. The letter concluded: "However, if my Clients and you can not reach an amicable agreement regarding the amount actually and legally due you, for the re-deeding and re-assigning to them of the said Farm and Personal Property—either you or they may obtain a legal adjudication of this question by a Bill for a Declaratory Decree." The invitation of the Foards to the Sniders to have the respective rights of the parties determined by · declaratory proceedings was eventually accepted. Some two years ensued before the parties could agree on the form and contents of the bill and answer. In the meantime, the Sniders had offered to discuss the matter. There were discussions between counsel in efforts to settle the differences of their clients. Letters were exchanged dealing with the many points of difference, such as the right of the Foards to continue to occupy the cottage, the cutting off of the electricity and the water, and others. Reliance was never put upon the fact that the option had expired before it was effectively exercised. The Sniders declare of record, in their answer in the declaratory proceedings, that they had ignored the letter of October 19, 1950 because of a belief that they then had, and still have, a fee simple title to Oakwood which must be taken to mean that their rights could not be affected by the option. It has been repeatedly held that a denial of liability on one ground may be a waiver of the right to rely on another.

In *McElroy v. John Hancock Life Ins. Co.*, 88 Md. 137, there was failure to furnish a life insurance company proof of death within the time limit of the policy. The Court held that because the company did not indicate that its refusal to pay was lack of proof of death, there was an inference that it had a meritorious defense on other points. The Court continued: "And in addition to this it may be fairly said that the defendant negotiated with the plaintiff without making the defense now relied on."; and added: "The following grounds or any one of them have been declared to be sufficient to constitute a waiver of any defect in, or defence arising out of failure to duly give notice and proof of death: 'A proposal to settle'; 'an absolute refusal to pay on the merits'; 'a denial of all liability'; 'a negotiation with the insured, without making the objection of defective proof of death.' " This case was relied on in *Fidelity & Casualty Co. v. Riley*, 168 Md. 430, where the same ruling as to waiver was made. We think that the record discloses much that makes these cases applicable here. See *Williston*, work cited, Vol. 3, Sec. 856.

To the evidence of waiver by conduct and writings, before the filing of the declaratory proceedings, must be added the confirmatory and additional evidence which these pleadings themselves afford. The Foards wrote the Sniders that they would institute a petition for declaratory decree which would ask the court to decide the following questions: 1, "Are any of the said Foards entitled to Redeem the Real Estate and the Personal Property which are mentioned in the Deed and Bill of Sale of April 20th, 1950, from E. Carey Foard and Wife (Mortgagees) to Cecil W. Snider and Wife (Mortgagors) —or in the simultaneous 'Option' from the said Sniders to Albert P. Foard (Partner of E. Carey Foard) ?" 2, "If the Court rules that the said Foards (or any of them) are entitled to Redeem the said Real Estate (known as Oakwood Farm) and the said Personal Property—the Court shall also decide how much is then legally due upon the Mortgage of E. Carey Foard and Wife to the

said Sniders. And if the Court rules that the Foards, or any of them, are also indebted to the Sniders for any of the latter's alleged improvements upon the said Oakwood Farm—the Court shall further decide the then value of the improvements to the Foards." The Sniders replied that they objected to the word "Mortgagees" after the names of Foard and his wife, and the word "Mortgagors" after the names of Snider and his wife, and they also objected to the phrase "Partner of E. Carey Foard" at the end of question No. 1, not because the terms were reversed but because one of the matters to be determined was whether there was in fact a mortgage or an actual conveyance. The Sniders further objected to the word "alleged", describing the improvement made to the Oakwood farm, and to the phrase "the then value", in reference to the improvements. They added: "Instead the last part of said question should read 'the Court shall further decide the cost of the improvements to the Foards'."

Under date of June 16, 1952, counsel for the Foards wrote counsel for the Sniders, saying that in preparing the petition to determine the question of redemption and how much was due the Sniders: "* * * I am bound to present the legal and factual views of the Foards relating to these two issues—and the Sniders, in their Answer to Petition, are at liberty to present their opposing views relating to the said two issues—without prejudice to the Pending Law Case No. 996—as we have repeatedly agreed." Counsel for the Sniders wrote counsel for the Foards three days later: "We realize that you may prepare the Petition in what ever manner that you may choose in order to present your view of the case. We will prepare an answer to the same, expressing our views on the questions to be decided by the Court." There followed the filing of the petition and the filing of an answer. In the answer, no mention was made, no hint given, that the Sniders had ever relied, or intended then to rely on the failure to exercise the option seasonably or in proper manner. The answer consists of some

twenty-one paragraphs. There is a full factual discussion, as well as statements of the legal position of the appellees on the question of value, why the deed of April 20, 1950 was absolute, as to the execution of the new first mortgage, the employment and dismissal of Albert P. Foard, the claimed trespass of Albert Foard after he had been dismissed, and other matters. It is apparent that the Sniders, as they had suggested in their letter, had intended to present fully their views as to their side of the case. This being so, failure to defend on the ground of untimely or improper exercise of the option, is highly significant. The respondents prayed, as did the complainants: 1, that the court should determine the legal effect of the deed and the bill of sale; and, 2, that the court should further determine the effect and enforceability of the option agreement of April 20, 1950 and what rights, if any, Albert Foard has under the same. Examples come readily to mind as to the effectiveness and conclusiveness of waiver by pleading or failing to plead. For example, the defense of limitations, which would otherwise be available, is waived or lost unless it is specially pleaded within the time required by the rules of court. If, however, the defendant joins issue to a replication before moving that a late plea be not received, the irregularity as to time of filing of the plea is thereby waived. *Stockett v. Sasscer,* 8 Md. 375, 377. As to other examples of waiver by pleading, see *Hutton v. Marx,* 69 Md. 252, 256; *Dorsey v. Campbell,* 1 Bland 356.

It follows from what we have said that from April 20, 1950 on, the Sniders were the owners of Oakwood farm and personal property thereon, subject only to the right of Albert Foard to repurchase the real and personal property upon paying the consideration which the Sniders paid, plus the cost of all additions and improvements which had been added by the Sniders, with interest, and that after June 1, 1950, the Foards were trespassers without legal right to remain on the farm. We will remand the case for the passage of a decree

which will effectuate the rights of the parties, as we have declared them. If they are unable to agree as to the consideration paid or the cost of the improvements and additions, the matter can be referred to an auditor for the taking of testimony which will establish these amounts. When they are established, by agreement or by the court, the parties should be given a reasonable time, say thirty days, in which to close the transaction, that is, to exchange the deed and bill of sale and the purchase price. Interest, of course, will be due on the consideration paid by the Sniders from April 20, 1950 and on the cost of the improvements from the time they put out the money for them. Further, Albert Foard will be liable for a fair rental value for the cottage occupied by him on Oakwood from June 1, 1950 to the time he vacates or until the time of repurchase, whichever first occurs.

We find it unnecessary to discuss any of the collateral and subsidiary issues raised by the appellants.

*Decree affirmed in part and reversed in part, appellees to pay the costs.*

HENDERSON, J., delivered the following opinion, dissenting in part.

I fully agree with the majority of the Court that the Chancellor was correct in holding the deed of April 20, 1950, to be an absolute conveyance and not in the nature of a mortgage. I think the Chancellor was also correct in holding that the separate option agreement of the same date was unenforceable on the ground of indefiniteness. The option to purchase granted to Albert Foard was "at and for a fair and reasonable evaluation of said property as determined by the said parties of the first part", that is to say, by the Sniders. No price was ever fixed by them and none was ever agreed to. If the clause setting forth the elements on which the price was to be "based" has the legal effect of superseding the words quoted, I think the auditor will have

difficulty in fixing the value of "the consideration paid"—whether more or less than the amount of the mortgages, which itself was in dispute—, the value of the physical improvements and the value of the "improvement of the stock * * *." Presumably the dairy herd has changed materially in the past four years. It may be noted that in the case chiefly relied upon, *Trotter v. Lewis,* 185 Md. 528, there was a tender of the maximum amount that could be demanded. But even assuming that the agreement was sufficiently definite, I think it was unenforceable on the ground that the offer to sell within six months was not accepted. And if no contract was made within that period I cannot follow the reasoning whereby it is held that a contract can be spelled out by subsequent waiver or acquiescence in submitting the case to judicial determination.

It is suggested that the letter of October 19, 1950, from counsel for the Foards constituted an acceptance of the Sniders' offer. This letter first demanded that the Sniders surrender possession of the farm and personal property on the ground that the court on the previous day had dissolved an injunction. But the ruling was simply that possession by the Foards should not be disturbed pending an adjudication on the merits, with the comment that Mr. and Mrs. Carey Foard were not parties to the injunction proceeding. The letter then stated that the Foards "at once wish to redeem the said Farm and Personal Property and to pay you in full all amounts legally due you upon your delivery to them of a merchantable Fee Simple Deed and a Bill of Sale, free of liens * * *." Referring to the "vague 'Agreement', * * * which you induced Albert P. Foard to sign upon the understanding, in substance, that the Deed and Bill of Sale was to secure to you your then loan * * * as stated in the Answer of Albert P. Foard * * *", the letter stated that the Foards "never understood and never agreed to pay you, for the redeeding and re-assigning of their Farm and Personal Property, the $6000.00 additional that you claimed * * *

for * * * alleged improvements * * *". So far from relying on the agreement as an option, the Foards repudiated it and refused to pay a part of the price therein specified. The final paragraph of the letter stated that if an agreement could not be reached "regarding the amount actually and legally due you, * * * either you or they may obtain a legal adjudication of this question by a Bill for a Declaratory Decree." An invitation to litigate can hardly be construed as an acceptance of the original offer. Counsel for the Sniders replied to the letter stating that "your demand for possession and redemption of the farm is without merit, inasmuch as the option has expired."

It is well established that "To effect a contract of sale capable of specific enforcement, the acceptance of an option must conform with the terms of the offer, and ordinarily must be unequivocal, absolute, and free from any condition. Acceptance can be made only on the terms contained in the option, and an attempt to accept on different terms amounts to a rejection of the option." 8 *Thompson, Real Property* (perm. ed.), § 4573. See also *Morris v. Goldthorp*, 60 N. E. 2d 857 (Ill.). I think Albert Foard would have been greatly surprised to learn that, by reason of the letter from his counsel, he then and there bound himself for the payment of a sum including $6,000 claimed for improvements to the buildings, particularly in view of his testimony that he understood when the option was signed that he could get the farm for the amount of the mortgage with interest. Nor is there anything in the record to suggest that he or his parents were in a position to make the payment. Albert was an impecunious party, with an earning capacity of $80 a month as a farm hand, deferred from military service because of that employment. His parents were in no better financial condition than they were six months before, when they were unable to refinance their loans. If Albert was willing to exercise the option, he was clearly not ready or able to do so. It was suggested in argument that the farm now has a large potential

value, not as a farm, but as a site for commercial or housing development due to the proposed location of a dual highway through or near the farm. If this be true, there is all the more reason to apply the general rule that time is of the essence and that equity should not grant specific performance where delay confers a speculative advantage.

The opinion of the court treats the submission of the case for declaratory decree as a waiver of the Sniders' right to contest the enforceability of the option agreement. Their answer to the petition for declaratory decree stated that they "ignored the demand of Petitioners' attorney, in his letter to your Respondents, dated October 19, 1950", because of their belief that they held fee simple title to the farm. They prayed that the court should determine whether the deed should be construed as a mortgage and "should further determine the effect and enforceability of the 'Option Agreement' of April 20, 1950, and what rights, if any, Albert P. Foard has under the same." I cannot construe this language as a concession that the agreement ripened into a contract at any time. It may be true that if the offer contained in the option had been accepted, in strict accordance with its terms, a reasonable time for payment might be implied. But if there was no acceptance, it seems clear to me that Albert acquired no rights under it. I think the decree appealed from should be affirmed.